[No. D034139. Fourth Dist., Div. One. May 25, 2000.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
JOSEPH A. BARRETT, Real Party in Interest.

COUNSEL

Gilbert G. Otero, District Attorney, and Ann M. Meyer for Petitioner.

No appearance for Respondent.

Eric Beaudikofer and Edward C. Sada for Real Party in Interest.

OPINION

**HALLER, J.**—This proceeding concerns the scope of the prosecution's discovery obligation in a criminal case. In this capital murder prosecution,

the People of the State of California, through the Office of the District Attorney of Imperial County (District Attorney), petition for a writ of prohibition after the trial court ordered the District Attorney to produce California Department of Corrections (CDC) documents for an in camera review to determine relevance.

We stayed the proceedings, issued an order to show cause and now grant the petition.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

Joseph A. Barrett is charged with the April 9, 1996 murder of his cellmate in the administrative segregation unit at Calipatria State Prison. Barrett, who at the time was serving a life sentence for murder, is charged with the capital offense of murder while serving a life sentence for a previous murder.

Barrett requested pretrial discovery of 73 categories of documents. At issue are 17 categories of documents that involve records maintained by CDC, including: °

— Logs from the administrative segregation unit, "A" yard central control, and "A" yard watch officer from September 1995 through April 1996 and incident logs from all yards from January 1992 through April 1996.

— Memos, documents and/or manuals regarding the change in the prison's administrative segregation unit from single-inmate to double-inmate cells and the criteria for cell assignments from January 1, 1992, through April 1996.

— Compilations of assaults, weapons or weapon stock, and acts of violence between prison inmates and between inmates and guards from January 1, 1992, through April 1996.

— Central files, including confidential sections, and movement sheets for Barrett and six inmates housed in the administrative segregation unit at the time of the homicide.

---

[1]Real party in interest, Joseph A. Barrett, argues the petition is premature because of the lack of a written order. At the time the District Attorney filed the petition, we were provided with a reporter's transcript for the August 24, 1999 hearing in which the trial court made its ruling. The reporter's transcript transcribed verbatim the ruling from the bench. We further requested court minutes because we understood no formal court order had been prepared. Apparently, the minutes from the August 24, 1999 hearing were inadvertently lost, and we were provided with reconstructed minutes from the reporter's transcript. The minutes accurately reflect the reporter's transcript. In any event, no party disputes the substance of the trial court's August 24, 1999 order.

— Movement sheets for 27 specified inmates from September 1995 through April 1996.

— Medical and psychological files on Barrett and two other specified inmates housed in the administrative segregation unit at the time of the homicide.

— Policy and procedure manuals for the administrative segregation unit in effect from September 1995 through April 1996.

— Records identifying weapons manufactured by inmates and weapon stock found at the prison from January 1992 through April 1996.

— Compilations identifying the number of assaults, including those resulting in death, by lifers at the prison from January 1992 to present.

— Compilations establishing the number or percentage of lifers at the prison from January 1992 through April 1996.

— Documents regarding the "Tier Yard" policy—inmates of different races and gang affiliations placed together in the administrative segregation unit exercise yard—from September 1995 through April 1996.

— Security and investigation crime packages, photos and videos of cell extractions, yard incidents and staff assaults from September 1995 through April 1996.

— Notes of interviews with administrative segregation unit staff and inmates regarding the murder investigation.

In ordering the District Attorney to produce these materials subject to a finding they are relevant, the trial court noted the District Attorney may be relying on some of the materials in the case, and CDC, as an investigating agency in the case, has been cooperative in providing People with access to the materials. The court opined it would "simply be unfair" to require the defense to subpoena the same materials from CDC when the District Attorney has access. The court also stated it was ordering production under the state's statutory scheme for criminal discovery and observed its order would be more in keeping with the reciprocal nature of the statutory scheme, and it would be more efficient for the District Attorney to produce the requested material than to require Barrett to pursue the material from CDC with a subpoena duces tecum.

The court also ruled it would review the documents at an in camera hearing with defense counsel present to make an offer of proof as to why

each item is relevant. The court excluded the People from the in camera hearing.

## DISCUSSION

The District Attorney contends it has no obligation to produce the material under either the state's criminal discovery statutes or under constitutional mandate. Further, the District Attorney maintains that excluding the People from a hearing to determine relevance of the material violates the prosecution's due process rights.

### California's Criminal Discovery Statutory Scheme

California's criminal discovery statutory scheme, which was enacted as part of Proposition 115 and is found at Penal Code[2] section 1054 et seq., sets forth an almost exclusive procedure for discovery in criminal cases. This was not always so.

Until the passage of Proposition 115, a decade ago, the development of criminal discovery rules in California had largely been a judicially driven engine following the path of the common law. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305] ["Unlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation."].) Before 1975, there was no criminal discovery statute, and, in 1990, when the voters adopted Proposition 115, there were only a handful of criminal discovery statutes on the books.[3]

By adding chapter 10 to title 6 of the Penal Code (§ 1054 et seq.), Proposition 115 instituted a comprehensive and very nearly exclusive system of discovery in criminal trials that was aimed toward "promot[ing] the ascertainment of truth," and "sav[ing] court time" "by requiring timely pretrial discovery," as well as "protect[ing] victims and witnesses from

[2]All statutory references are to the Penal Code unless otherwise specified.

[3]The five criminal discovery statutes as of 1990 were former section 859 (delivery of police reports to felony defendants), which was amended in 1975 to include discovery provisions; former section 1102.5 (prosecutor entitled to defense witnesses' statements), which was enacted in 1982; former section 1102.7 (victim or witness address or telephone number need not be furnished directly to defendant), which was enacted in 1984; former section 1430 (delivery of police reports to misdemeanor defendants), which was enacted in 1975; and section 190.3 (notice of prosecutor's intent to present evidence aggravation), which was enacted by electorate in 1978 as part of the death penalty statute. Proposition 115 repealed the discovery provisions of section 859 and repealed sections 1102.5, 1102.7 and 1430 in their entirety.

danger, harassment, and undue delay of the proceedings." (§ 1054.) Perhaps most significantly, the initiative added constitutional (see Cal. Const., art. I, § 30, subd. (c)) and statutory (see Pen. Code, § 1054 et seq.) language authorizing reciprocal discovery in criminal trials.

Under the statutory scheme, both the defendant and the prosecutor must begin discovery efforts with an informal request directed to the opposing party. (§ 1054.5, subd. (b).) Either party may seek a court order enforcing discovery if the opposing party does not comply with the request within 15 days, and either party may claim specified privileges to protect certain materials from discovery. (See *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 374-375 [285 Cal.Rptr. 231, 815 P.2d 304]; §§ 1054.5, subd. (b), 1054.6.)[4]

Under section 1054.1, the prosecutor is required to disclose the following materials, if they are in the prosecutor's possession or the prosecutor knows them to be in the possession of the investigating agencies:

— The names and address of persons the prosecutor intends to call as witnesses at trial. (§ 1054.1, subd. (a).)

— Statements of all defendants. (§ 1054.1, subd. (b).)

— All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. (§ 1054.1, subd. (c).)

— The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. (§ 1054.1, subd. (d).)

— Any exculpatory evidence. (§ 1054.1, subd. (e).)

— Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial. (§ 1054.1, subd. (f).)

The procedural mechanisms of the discovery statutory scheme (§ 1054 et seq.) are exclusive—that is, the parties to a criminal proceeding may not

---

[4]The scope of discovery is not identical for defendants and prosecutors. (Compare § 1054.1 [required disclosure by prosecutor] to § 1054.3 [required disclosure by defendant].)

employ discovery procedures other than those authorized by chapter 10. (§ 1054.5, subd. (a).)[5] However, the statutory scheme expressly permits discovery outside its terms, "as provided by . . . other express statutory provisions, or as mandated by the Constitution of the United States." (§ 1054, subd. (e).) Thus, a defendant maintains his or her right to discovery of material exculpatory evidence under the due process clause (see discussion *post*) and continues to have the right to use statutory discovery procedures not expressly repealed by Proposition 115 (see discussion *post*). When a discovery request asks for disclosure of materials specifically covered by other statutes, the procedural mechanisms provided in the other statutes prevail. (*Albritton v. Superior Court* (1990) 225 Cal.App.3d 961 [275 Cal.Rptr. 314].)

■ Chapter 10 also controls the substance of criminal discovery in California except for discovery that is mandated by the United States Constitution and discovery that is expressly provided in other statutes. Thus, unless a requested item is authorized by other statutes or is constitutionally required, the parties to a criminal proceeding are entitled to obtain disclosure of only those items listed in sections 1054.1 and 1054.3.

■ The requirements and procedural mechanisms of chapter 10 apply only to the parties in a criminal case—that is, the prosecution and the defendant(s). This is highlighted in the statutory statement of purpose: "To save court time by requiring that discovery be conducted informally *between and among the parties* before judicial enforcement is requested." (§ 1054, subd. (b), italics added; see also *People v. Sanchez* (1994) 24 Cal.App.4th 1012, 1026 [30 Cal.Rptr.2d 111].) The statutory discovery scheme does not apply to discovery from third parties. (*People v. Superior Court (Broderick)* (1991) 231 Cal.App.3d 584, 594 [282 Cal.Rptr. 418].) However, investigatory agencies that work on the case are considered part of the prosecution team and a defendant must use the discovery procedures set forth in chapter 10 to obtain discovery from such agencies. (§ 1054.5, subd. (a).)

Under section 1054.5, subdivisions (b) and (c), the court has various options at its disposal to enforce the discovery provisions of chapter 10, including ordering immediate disclosure, contempt proceedings, continuance of the matter, and delaying or prohibiting a witness's testimony or the presentation of real evidence.

---

[5]Section 1054.5, subdivision (a), reads: "No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties."

*Constitutional Mandate to Disclose Exculpatory Evidence*

■ Prosecutors have a constitutional mandate to disclose exculpatory material evidence to defendants in criminal cases. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215] (*Brady*).)

In *United States v. Agurs* (1976) 427 U.S. 97, 107 [96 S.Ct. 2392, 2399, 49 L.Ed.2d 342], the *Brady* rule was extended to impose a duty on prosecutors to volunteer exculpatory matter to the defense even without a request for such material. (Accord, *In re Ferguson* (1971) 5 Cal.3d 525, 532-533 [96 Cal.Rptr. 594, 487 P.2d 1234].)

*Brady* exculpatory evidence is the only substantive discovery mandated by the United States Constitution. A criminal defendant does not have a general constitutional right to discovery. (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [97 S.Ct. 837, 845, 51 L.Ed.2d 30]; *Gray v. Netherland* (1996) 518 U.S. 152, 168 [116 S.Ct. 2074, 2083-2084, 135 L.Ed.2d 457]; accord, *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1258 [275 Cal.Rptr. 729, 800 P.2d 1159].)

The constitutional duty that requires prosecutors to disclose exculpatory evidence to a criminal defendant is independent from the statutory duty contained in section 1054.1, subdivision (e). (*Izazaga v. Superior Court, supra,* 54 Cal.3d at p. 378; § 1054, subd. (e).)

"The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. . . . [I]f a statutory discovery scheme exists, these due process requirements operate outside such a scheme. The prosecutor is obligated to disclose such evidence *voluntarily,* whether or not the defendant makes a request for discovery.

"[T]he new discovery chapter contemplates disclosure *outside* the statutory scheme pursuant to constitutional requirements as enunciated in *Brady, supra,* 373 U.S. 83 and its progeny." (*Izazaga v. Superior Court, supra,* 54 Cal.3d at p. 378, original italics.)

■ A prosecutor's duty under *Brady* to disclose material exculpatory evidence extends to evidence the prosecutor—or the prosecution team—

knowingly possesses or has the right to possess. The prosecution team includes both investigative and prosecutorial agencies and personnel. (See *In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715].) In *Kyles v. Whitley* (1995) 514 U.S. 419, 437-438 [115 S.Ct. 1555, 1567, 131 L.Ed.2d 490], the Supreme Court held that a prosecutor has a duty to learn of favorable evidence known to other prosecutorial and investigative agencies acting on the prosecution's behalf, including police agencies. The scope of the prosecutorial duty to disclose encompasses exculpatory evidence possessed by investigative agencies to which the prosecutor has reasonable access. (*People v. Robinson* (1995) 31 Cal.App.4th 494, 499 [37 Cal.Rptr.2d 183].)

A prosecutor has a duty to search for and disclose exculpatory evidence if the evidence is possessed by a person or agency that has been used by the prosecutor or the investigating agency to assist the prosecution or the investigating agency in its work. The important determinant is whether the person or agency has been "acting on the government's behalf" (*Kyles v. Whitley, supra,* 514 U.S. at p. 437 [115 S.Ct. at p. 1567]) or "assisting the government's case." (*In re Brown, supra,* 17 Cal.4th at p. 881.)

Conversely, a prosecutor does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor does not have the duty to search for or to disclose such material.

*Relevant Statutes Outside of Chapter 10—Third Party Discovery in Criminal Cases*

Section 1054 et seq. applies to disclosure of materials only between the prosecutor and the defendant and/or his or her counsel. These provisions do not regulate discovery from third parties. (*People v. Superior Court (Broderick), supra,* 231 Cal.App.3d at p. 594.)

■ Sections 1326 and 1327 set forth the procedure for either the prosecutor or the defendant to obtain discovery records possessed by third parties. A subpoena duces tecum does not require the party subpoenaed to provide the defendant with a copy of the materials sought, but does require that person or entity to produce the information in court for the defendant's inspection. (*Pacific Lighting Leasing Co. v. Superior Court* (1976) 60 Cal.App.3d 552, 560 [131 Cal.Rptr. 559].)

Third party records are required to be produced to the court rather than the attorney for the subpoenaing party because: "The issuance of a subpoena duces tecum . . . is purely a ministerial act and does not constitute legal process in the sense that it entitles the person on whose behalf it is issued to obtain access to the records described therein until a judicial determination has been made that the person is legally entitled to receive them." (*People v. Blair* (1979) 25 Cal.3d 640, 651 [159 Cal.Rptr. 818, 602 P.2d 738].)

A criminal defendant has a right to discovery by a subpoena duces tecum of third party records by showing "the requested information will facilitate the ascertainment of the facts and a fair trial." (*Pitchess v. Superior Court, supra,* 11 Cal.3d 531 at p. 536.)

In *Pitchess v. Superior Court, supra,* 11 Cal.3d at page 534, the defendant asserted self-defense to a charge of battery against deputy sheriffs and moved for production of files concerning internal affairs investigations of the deputies by the sheriff's department. The trial court granted the motion and ordered the prosecution to secure the records from the sheriff. (*Ibid.*) The sheriff's department refused to cooperate, ultimately resulting in mandamus proceedings before the state Supreme Court. (*Ibid.*)

The Supreme Court upheld the power of the superior court to issue the subpoena duces tecum directing the sheriff to produce the records of several internal affairs unit investigations. (*Pitchess v. Superior Court, supra,* 11 Cal.3d at pp. 535-538.) "Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. [Citations.]" (*Id.* at p. 535.)

■ The right of discovery in criminal cases is, of course, not absolute. The court retains wide discretion to protect against the disclosure of information that might unduly hamper the prosecution or violate some other legitimate governmental interest. For example, a public agency has a right to prevent disclosure of "official information" under Evidence Code section 1040, which provides in pertinent part:

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if . . . .

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ."

The statute defines official information as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (Evid. Code, § 1040, subd. (a).) The court should hold an in camera hearing when a claim of privilege for official information is made. (See *In re Muszalski* (1975) 52 Cal.App.3d 475, 483 [125 Cal.Rptr. 281].) The burden is on the governmental agency to demonstrate the privilege. (*Ibid.*)

*Analysis*

The status of CDC presents a threshold issue. It cannot be reasonably disputed—and the District Attorney acknowledges as much—that prison officials interviewed crime witnesses, prepared reports and performed other investigative tasks in connection with the homicide that took place inside the prison. In short, CDC clearly was an investigatory agency in the case and part of the investigative team.

However, the status of CDC in this case is not straightforward. In addition to being an investigatory agency in the homicide prosecution, CDC first and foremost supervises, manages and controls the state prisons, including Calipatria. (§§ 5000, 5003, 5054.) CDC is a distinct and separate governmental entity from the District Attorney.[6] In connection with its administrative and security responsibilities in housing California felons while they serve their sentences, CDC is not part of the prosecution team. Thus, for our purposes, CDC has a hybrid status: part investigatory agency, and part third party.

██ With respect to CDC's role as an investigatory agency, Barrett can only compel discovery of materials generated or maintained by CDC relating to its investigation of the April 9, 1996 homicide under the provisions of chapter 10. (§ 1054.5, subd. (a).) Further, CDC materials relating to its investigation of the homicide are subject to defense discovery under section 1054.1 only if they come within the inclusive listing of discoverable items listed in the statute—that is, section 1054.1, subdivisions (a) through (f). To the extent the court ordered the prosecution to turn over such materials to Barrett, the order was proper. (§§ 1054.1, 1054.5, subd. (a).) The District Attorney shall turn over such materials to Barrett, subject to exceptions listed in sections 1054.6 and 1054.7. If the District Attorney refuses to

---

[6]CDC does not have the same type of relationship to state prosecutors as the United States Bureau of Prisons has to federal prosecutors. The federal Bureau of Prisons and the United States Attorney's Office are branches of the same federal department, the United States Department of Justice. Thus, federal court opinions (see, e.g., *U.S. v. Santiago* (9th Cir. 1995) 46 F.3d 885, 894) that deem the United States Attorney to be in constructive possession of prison records maintained by Bureau of Prisons—that is the same federal department—are distinguishable.

comply with the discovery order, it exposes itself to the sanctions outlined in section 1054.5, subdivisions (b) and (c).

However, the bulk of the 17 categories of CDC documents that are the subject of this writ proceeding was not gathered by CDC in connection with its investigation of the April 9, 1996 homicide. Rather, these CDC documents, most of which predate the homicide, are records kept by CDC in the course of running the prison. (See § 2081.5.) Barrett cannot rely on the provisions of chapter 10 for discovery of materials from CDC that are strictly related to its operation of Calipatria State Prison, that is, materials CDC generated when it was not acting as part of the prosecution team. To the extent Barrett is seeking records that CDC maintains in the regular course of running Calipatria State Prison, Barrett is trying to obtain material from a third party. (Accord, *U.S. v. Aichele* (9th Cir. 1991) 941 F.2d 761, 764 [federal prosecutor not in possession or control over witness's CDC file and not obligated "to turn over materials not under its control"].) The reciprocal discovery statutory scheme has no application to discovery sought from third parties. *(People v. Superior Court (Broderick), supra,* 231 Cal.App.3d at p. 594.)

The nonapplicability of chapter 10 does not preclude Barrett from discovering these materials through other means. "An accused is entitled to any ' "pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense. . . ." [Citation.]' [Citations.]" *(Vela v. Superior Court* (1989) 208 Cal.App.3d 141, 148 [255 Cal.Rptr. 921], italics omitted.) Documents and records in the possession of nonparty witnesses and government agencies other than agents or employees of the prosecutor are obtainable by subpoena duces tecum. *(Pacific Lighting Leasing Co. v. Superior Court, supra,* 60 Cal.App.3d 552, 560.) A criminal defendant has a right to discovery by a subpoena duces tecum of third party records on a showing of good cause—that is, specific facts justifying discovery. *(Millaud v. Superior Court* (1986) 182 Cal.App.3d 471, 475 [227 Cal.Rptr. 222].) We conclude that to obtain materials from CDC in its capacity as the administrator of the state prison system, Barrett must resort to a subpoena duces tecum.

Having determined the issuance of a subpoena duces tecum is required to have CDC produce the bulk of the materials Barrett seeks, the question of which party has the duty to issue the subpoena remains. As we shall explain, we conclude this is Barrett's responsibility.

The prosecution has no general duty to seek out information from other agencies or sources that might be beneficial to the defense, except for

information that is reasonably accessible to the prosecution and not to the defendant. (See *In re Littlefield* (1993) 5 Cal.4th 122, 135, 136 [19 Cal.Rptr.2d 248, 851 P.2d 42].) Here, the District Attorney and Barrett for all practical purposes may have nearly equal access to the CDC materials. Because of the purported sensitive nature of some of the CDC materials sought by Barrett, the District Attorney has represented that the materials "in all likelihood [will] not be turned over to the People upon request."

We agree. Given the confidential nature of some files and security concerns within the prison, there is a strong probability that CDC will resist producing at least some of the requested materials, regardless of whether the District Attorney or Barrett issues the subpoena. Therefore, it makes more sense for the task to fall on Barrett.

If the District Attorney were to issue the subpoena to CDC and CDC were opposed to turning over some or all of the requested documents, the District Attorney and CDC would be at loggerheads on the contested materials. To create such a scenario is illogical. For one thing, the District Attorney would be put in the position of pursuing Barrett's discovery interests even though in the underlying case, the District Attorney and Barrett are adversaries. Also, counsel for Barrett, who obviously would know the defense theory, presumably would be better able to make a stronger advocacy pitch for production of the materials by·CDC. Moreover, if the District Attorney rather than Barrett were required to issue the subpoena to CDC, it would build into the case a classic appellate issue—namely, that Barrett was logically and better positioned to be his own advocate on the discovery issue than his adversary, the District Attorney.

■ We are cognizant that before passage of Proposition 115, courts could require a prosecutor to obtain records in the possession of an uncooperative agency. For example, in *Saulter v. Municipal Court* (1977) 75 Cal.App.3d 231, 241 [142 Cal.Rptr. 266], the defendant sought records from the federal Bureau of Alcohol, Tobacco and Firearms, which refused to comply with the defendant's subpoena. The court denied defendant's request that the prosecution be ordered to obtain the records from the federal agency. (*Id.* at pp. 242-243.) The Court of Appeal reversed, finding the magistrate should have required the prosecutor to first request the records, and if that failed, to subpoena them. (*Id.* at p. 245.)

However, it is doubtful that such cases continue to be viable in light of the criminal discovery statutory scheme put in place by Proposition 115. (Accord, Pipes & Gagen, Cal. Criminal Discovery (2d ed. 1999) § 3:41.2, p. 225.) This is so for at least two reasons. First, chapter 10 authorizes

discovery only when the material sought is actually possessed by the prosecution or when the prosecution has the right to exercise control over the material. Second, cases such as *Saulter v. Municipal Court, supra,* 75 Cal.App.3d 231 arose at a time when it was an accepted view that the preliminary hearing, in addition to determining whether there was probable cause, was a vehicle for defense discovery. (*Id.* at p. 248, fn. 4.) This view is obsolete. Proposition 115 amended section 866 to provide that preliminary hearings "shall not be used for purposes of discovery" (§ 866, subd. (b)) and to institute procedural limitations to thwart defendants from using preliminary hearings as discovery vehicles. (See *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 344 [276 Cal.Rptr. 326, 801 P.2d 1077].)

If Barrett issues a subpoena duces tecum to CDC, the department must submit the subpoenaed documents to the court for inspection. CDC, of course, could move to quash the subpoena and would have the opportunity, through its legal representative, to lodge objections and set forth any claims of privilege against disclosure of the material at an in camera hearing. (*Pacific Lighting Leasing Co. v. Superior Court, supra,* 60 Cal.App.3d at p. 568; see Cal. Rules of Court, rule 859 [in camera hearing procedures].)[7]

■ At this point, of course, one cannot say whether any of the requested CDC documents are relevant to Barrett's defense. Assuming CDC moved to quash a subpoena duces tecum by Barrett, the burden would be on Barrett to demonstrate the materials he seeks are relevant. (See *United States v. Valenzuela-Bernal* (1982) 458 U.S. 858, 867 [102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193], fn. omitted ["He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."].)

We note the trial court correctly reasoned that Barrett should be permitted to present his relevancy theories at an in camera hearing. An in camera hearing is necessary to protect Barrett's Fifth Amendment right against

---

[7]In that event, Barrett must have a plausible justification (*Pacific Lighting Leasing Co. v. Superior Court, supra,* 60 Cal.App.3d at pp. 566-567) or good cause showing of need (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1691-1692 [53 Cal.Rptr.2d 282], disapproved of on other ground in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123 [65 Cal.Rptr.2d 1, 938 P.2d 986]) for inspection of the third party records. A subpoena duces tecum that makes a blanket demand for CDC documents and amounts to nothing more than a fishing expedition is subject to being quashed. (*People v. Serrata* (1976) 62 Cal.App.3d 9, 15 [133 Cal.Rptr. 144, 84 A.L.R.3d 952].)

Along these lines, we note that prior to issuing the order to show cause, we directed Barrett and the District Attorney to address whether the request for prison records dating back to January 1992 was overbroad. We do not reach the overbreadth issue because it is obviously premature to do so at this point in time. The issue, however, is one that the trial court should consider if raised in further proceedings below.

self-incrimination and Sixth Amendment right to counsel. (See *State of California ex rel. Dept. of Transportation v. Superior Court* (1985) 37 Cal.3d 847, 855-856 [210 Cal.Rptr. 219, 693 P.2d 804]; *Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 829 [133 Cal.Rptr. 325].) At this investigatory stage of the proceedings, it would be inappropriate to give Barrett the Hobson's choice of going forth with his discovery efforts and revealing possible defense strategies and work product to the prosecution, or refraining from pursuing these discovery materials to protect his constitutional rights and prevent undesirable disclosures to his adversary. (See *People v. Worthy* (1980) 109 Cal.App.3d 514, 525, fn. 3 [167 Cal.Rptr. 402].)

The District Attorney's reliance upon this court's decision in *Department of Corrections v. Superior Court* (1988) 199 Cal.App.3d 1087 [245 Cal.Rptr. 293], is misplaced. In *Department of Corrections v. Superior Court, supra,* 199 Cal.App.3d at pages 1091-1092, the trial court issued an ex parte order that sealed defendant's subpoena duces tecum and supporting documents seeking prison records and prohibited the department from communicating with the district attorney about the produced records. We found it was a denial of the district attorney's due process rights to issue such a broad order without affording the district attorney any opportunity to be heard. (*Id.* at pp. 1092-1094.) At issue in this case at this point of time is a defendant's offer of proof on the relevancy of the materials he seeks—an offer of proof that very well may involve privileged information or the attorney's work product.

### DISPOSITION

Let a writ issue directing the superior court to vacate its order of August 24, 1999, and to enter new orders consistent with this opinion. The stay will be vacated when this opinion is final as to this court.

Kremer, P. J., and Huffman, J., concurred.