119 Cal.Rptr.2d 811 (2002)
98 Cal.App.4th 549
The PEOPLE, Plaintiff and Respondent,
v.
Jerry NORTHUP, Defendant and Appellant.
No. B150933.
Court of Appeal, Second District, Division Three.
May 16, 2002.
Rehearing Denied June 3, 2002.
Review Denied September 11, 2002.[*]
*813 Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Scott A. Taryle and Jeffrey A. Hoskinson, Deputy Attorneys General, for Plaintiff and Respondent.
*812 CROSKEY, Acting P.J.

INTRODUCTION
In Brady v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (Brady) and its progeny, the United States Supreme Court concluded that prosecutors have a duty to disclose to a defendant any evidence in their possession which is favorable to the defendant and material to guilt or punishment. Today, in a case involving a defendant's claimed right to receive such allegedly favorable information from a peace officer's personnel file, we hold no Brady violation occurred because of any failure by the People (1) to determine whether such evidence existed or (2) to disclose the same to the defendant, Jerry Northup. First, Northup failed to meet his burden of showing that the files of the Los Angeles County Sheriffs Department contained any such evidence. Second, any such evidence in those files was not, for purposes of Brady, possessed by the People, that is, it was not possessed by an agency that was "acting on the government's behalf in the criminal case against Northup. For each of these two reasons, the record fails to demonstrate that any Brady violation occurred.
Jerry Northup appeals from the judgment entered following his jury conviction for possession of methamphetamine (Health & Saf.Code, § 11377, subd. (a)), and having suffered two prior felony convictions (Pen.Code, § 667, subd. (d)) and two prior felony convictions for which he served separate prison terms (Pen.Code, § 667.5, subd. (b)). He was sentenced to prison for eight years.

FACTUAL SUMMARY
Viewed in accordance with the usual rules on appeal (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103), the evidence established that on January 7, 2000, Northup possessed .17 grams of a usable amount of methamphetamine in Los Angeles County. Northup later discarded the methamphetamine, and *814 a glass pipe, before he was detained by Los Angeles County Sheriffs Deputies Edward Looney and Michael Inge.
In defense, Northup, who had suffered two burglary convictions, a conviction for robbery with personal use of a dangerous or deadly weapon, a conviction for felonious assault with personal use of a dangerous or deadly weapon, and a conviction for battery upon a custodial officer, and who was on parole at the time of the present offense, denied the present offense and denied possession of the pipe.

CONTENTION
Northup contends his conviction "must be reversed for the court's failure to order disclosure of police officer character evidence pursuant to Brady v. Maryland."

DISCUSSION

1. Relevant Procedural Background.

On about February 15, 2000, Northup filed a pretrial motion pursuant to Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 (Pitchess), and Evidence Code sections 1043 et seq.,[1] seeking the names and addresses of persons who had filed complaints against deputies Looney or Inge for "acts of official misconduct amounting to moral turpitude, including, but not limited to, allegations of, false arrest, planting evidence, fabrication of police reports, fabrication of probable cause, false testimony and/or perjury." The motion also sought eight enumerated categories of related reports and information.
In the written motion, Northup argued that (1) the deputies falsely stated in their report that Northup possessed or discarded methamphetamine or a glass pipe, (2) the deputies may have planted those items on Northup, and (3) the deputies would be committing perjury if they testified that Northup had possessed or discarded them. Northup urged that the information sought would be relevant to the deputies' credibility and as propensity evidence. The People filed an opposition.
At the March 7, 2000 hearing on the motion, the court, counsel for the parties, and counsel for the Los Angeles County Sheriffs Department were present when the court discussed with department counsel whether Northup had made an adequate showing in his Pitchess motion. The court did not expressly conclude that Northup's showing was adequate, but indicated its uncertainty as to what more Northup could have shown.
The court later, without subsequent objection from Northup, ordered sheriffs department counsel to provide by March 15, 2000, the names and addresses of anyone who had filed against the deputies a complaint alleging that they had lied, planted evidence, made false arrests, or fabricated probable cause or police reports.[2] The court denied the motion to the extent there were "other records [that were] being sought[.]" The court indicated that its orders rendered it unnecessary to have an in-camera hearing to review department files, and department counsel could either provide Northup with the information or tell him it did not exist if that were the case.[3]
*815 On April 25, 2000, Northup filed another Pitchess motion. The second motion was essentially the same as the first, but sought information concerning complaints, if any, filed by a specifically identified person. A supporting declaration of Northup's trial counsel reflected that the sheriffs department had advised Northup that the identified person had filed a dishonesty complaint against either or both deputies. The supporting declaration of Northup's investigator reflected that he had been unable to locate the identified person. The People filed an opposition.[4]
On May 18, 2000, Northup, citing Brady, filed a document demanding that the court and prosecutor provide "discovery of Brady material contained in police personnel files." (Capitalization omitted.) In that document, Northup demanded that the prosecutor examine said files as to the involved deputies and provide all "Brady" information to Northup. Northup requested that, in the event the prosecutor failed to provide the information, the court either order the prosecutor to comply with Brady or dismiss the case. Northup urged that the requirements of Pitchess did not limit the prosecutor's obligations under Brady, and that "information in a peace officer's personnel file is Brady material." (Capitalization omitted.)
On May 26, 2000, the court indicated that it had previously granted Northup's request to determine if anyone had previously filed complaints that the deputies had lied.[5] The court acknowledged that there was one such complaint, and that Northup had been given the name of the person who had made it. The court observed that (1) it had ordered that the person's address be disclosed to Northup, (2) Northup had been unable to locate the person, and (3) Northup had filed the second Pitchess motion "to find out ... something more than just his name."
The court noted that the custodian of records was present in court and possessed original documents. The court then reviewed the documents to "see whether it's even something that needs to be disclosed at all." After reviewing the documents, the court stated, "What is in here would not be discoverable. It would be irrelevant and even if it were relevant, it would not be admissible."[6] The court *816 later denied the "rest" of Northup's Pitchess motion.[7]
On May 30, 2000, the People filed an "opposition to [Northup's] demand that the People review police personnel files for Brady material." (Capitalization omitted.) The People argued that there was no investigation of the deputies being conducted; the sheriffs department was in sole possession of the files; Northup, not the People, should obtain from the sheriffs department any Brady material in the files; and the People were "limited to the ... [Pitchess] motion ...."
On June 5, 2000, Northup filed a "Motion to compel compliance with demand for Brady material contained in police personnel files[.]" (Capitalization omitted.) At the June 20, 2000 hearing on the motion, Northup urged, inter alia, that Pitchess, and the Evidence Code sections which had codified Pitchess principles, were unconstitutional because they violated Brady. The court declined to address Northup's constitutional argument, and declined to "grant any other relief that the defense would be entitled to other than what is provided under the Pitchess case, its progeny, and the appropriate Evidence Code sections."

2. No Brady Error Occurred.

Northup claims, in essence, that Brady error occurred, and that Pitchess and the statutes codifying its principles are unconstitutional as violative of Brady.[8]

a. Brady v. Maryland

In Strickler v. Greene (1999) 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286, the United States Supreme Court observed that "In Brady [v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215] this Court held `that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' 373 U.S., at 87 [83 S.Ct. 1194]. We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 [96 S.Ct. 2392, 49 L.Ed.2d 342], (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 [105 S.Ct. 3375, 87 L.Ed.2d 481], (1985)." (Strickler v. Greene, supra, 527 U.S. at p. 280, 119 S.Ct. 1936, italics added.)
Strickler also observed, "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (Strickler v. Greene, supra, 527 U.S. at pp. 281-282,119 S.Ct. 1936, italics added.)
*817 The Brady rule "arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." (United States v. Agurs (1976) 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342, italics added.) After describing the first and second situations,[9]Agurs observes that, in the third, the prosecutor was in the possession of exculpatory information and the defendant made either no request or a general request, e.g., "ask[ing] for `all Brady material' or for `anything exculpatory.'" (Id. at p. 106, 96 S.Ct. 2392, italics added.)
Brady does not require disclosure of information when that information is not itself admissible and only might lead to admissible evidence. In such circumstances, the information is not itself "evidence" for purposes of Brady, and the mere fact that such information might lead to the discovery of admissible evidence does not make such information "material" for purposes of Brady. (Wood v. Bartholomew (1995) 516 U.S. 1, 5-8, 116 S.Ct. 7, 133 L.Ed.2d 1 (hereafter, Wood).)
Under Brady, evidence is material "`if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' Id., at 682 [105 S.Ct. 3375]; see also Kyles v. Whitley, 514 U.S. 419, 433-434 [115 S.Ct. 1555, 131 L.Ed.2d 490], (1995)." (Strickler v. Greene, supra, 527 U.S. at p. 280, 119 S.Ct. 1936.) Regarding the "establish[ing of] ... prejudice necessary to satisfy the `materiality' inquiry," (id. at p. 282, 119 S.Ct. 1936) the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. (Id. at pp. 289-290, 119 S.Ct. 1936.) The "materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. [Citation.] Rather, the question is whether `the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' [Citation.]" (Strickler v. Greene, supra, 527 U.S. at p. 290, 119 S.Ct. 1936, italics added.) Moreover, in the context of Brady "`once a reviewing court ... has found constitutional error there is no need for further harmless-error review.' (Kyles, supra, 514 U.S. at p. 435 [115 S.Ct. at p. 1566].) The one subsumes the other. (Id. at pp. 435-436 [115 S.Ct. at pp. 1566-1567].)" (In re Brown (1998) 17 Cal.4th 873, 887, 72 Cal.Rptr.2d 698, 952 P.2d 715 (hereafter, Brown).)
The Brady rule "encompasses evidence `known only to police investigators and not to the prosecutor.' [Citation.] In order to comply with Brady, therefore, `the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.' Kyles, 514 U.S., at 437 [115 S.Ct. 1555]." (Strickler v. Greene, supra, 527 U.S. at pp. 280-281, 119 S.Ct. 1936, italics added.)[10]
*818 In Brown, our Supreme Court stated, "The scope of this disclosure obligation extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge `any favorable evidence known to the others acting on the government's behalf ....' (Kyles, supra, 514 U.S. at p. 437 [115 S.Ct. 1555] ....) Courts have thus consistently `decline[d] "to draw a distinction between different agencies under the same government, focusing instead upon the `prosecution team' which includes both investigative and prosecutorial personnel."' [Citation.] [Fn. omitted.]" (Brown, supra, 17 Cal.4th at p. 879, 72 Cal.Rptr.2d 698, 952 P.2d 715, italics added.) Brown also observed, "`The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.'" (Brown, supra, 17 Cal.4th at p. 879, 72 Cal.Rptr.2d 698, 952 P.2d 715, italics added, quoting U.S. v. Payne (2d Cir.1995) 63 F.3d 1200, 1208.)
In People v. Superior Court (Barrett) (2000) 80 Cal.App.4th 1305, 96 Cal.Rptr.2d 264, the court stated, "A prosecutor's duty under Brady to disclose material exculpatory evidence extends to evidence the prosecutoror the prosecution team knowingly possesses or has the right to possess. The prosecution team includes both investigative and prosecutorial agencies and personnel.... [¶] A prosecutor has a duty to search for and disclose exculpatory evidence if the evidence is possessed by a person or agency that has been used by the prosecutor or the investigating agency to assist the prosecution or the investigating agency in its work.[11] The important determinant is whether the person or agency has been `acting on the government's behalf (Kyles v. Whitley, supra, 514 U.S. at p. 437 [115 S.Ct. 1555] ...) or `assisting the government's case.' (In re Brown, supra, 17 Cal.4th at p. 881, 72 Cal.Rptr.2d 698, 952 P.2d 715.)" (People v. Superior Court (Barrett), supra, 80 Cal.App.4th at pp. 1314-1315, 96 Cal. Rptr.2d 264, italics added.)
Barrett continued, "Conversely, a prosecutor does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor does not have the duty to search for or to disclose such material." (People v. Superior Court (Barrett), supra, 80 Cal.App.4th at p. 1315, 96 Cal.Rptr.2d 264, italics added.)

b. Pitchess v. Superior Court.

The law concerning Pitchess motions was recently discussed in People v. Mooc (2001) 26 Cal.4th 1216, 114 Cal. Rptr.2d 482, 36 P.3d 21 (hereafter, Mooc). When a defendant seeks discovery from a peace officer's personnel records, the defendant must file a written motion which, inter alia, describes the type of records or information sought, and includes "`[affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation....'" (Id. at p. 1226, 114 Cal.Rptr.2d 482, 36 *819 P.3d 21.) If an adequate motion has been filed, the custodian of records should bring to the court all documents potentially relevant to the motion. The court examines them in camera in the absence of the defendant. Subject to exceptions and limitations not pertinent here, the court then discloses to the defendant "`such information [that] is relevant to the subject matter involved in the pending litigation.'" (Ibid.)
Moreover, "the standard governing discovery of personnel records is not whether the information discovered is ultimately admissible at trial. `Section 1043 has no such precondition. Quite to the contrary, the Legislature has determined that the moving party must show only that the personnel records are material to the subject matter in the pending litigation.' (Pierre C. v. Superior Court [1984] 159 Cal.App.3d [1120,] 1122-1123 [206 Cal.Rptr. 82];....)" (Larry E. v. Superior Court (1987) 194 Cal.App.3d 25, 31-32, 239 Cal.Rptr. 264, first italics added.) Pitchess discovery "`is not limited to admissible evidence, but encompasses information which may lead to relevant evidence.'" (Larry E. v. Superior Court, supra, 194 Cal.App.3d at p. 32, 239 Cal. Rptr. 264, italics added, quoting Kelvin L. v. Superior Court (1976) 62 Cal.App.3d 823, 828, 133 Cal.Rptr. 325.) A trial court's ruling on a Pitchess motion is subject to the abuse of discretion standard of appellate review. (Mooc, supra, 26 Cal.4th at p. 1228, 114 Cal.Rptr.2d 482, 36 P.3d 21.) However, even if a trial court abuses its discretion by denying a Pitchess motion, that fact establishes only trial court error, and reversal of the judgment is not warranted unless the error was prejudicial. (People v. Memro (1985) 38 Cal.3d 658, 684-685, 214 Cal.Rptr. 832, 700 P.2d 446.)
Like the present case, Pitchess involved discovery sought concerning alleged misconduct by sheriffs deputies. Pitchess observed that the defendant therein "moved for the production of records of several investigations conducted by the administrative services bureau, a sheriffs department internal unit which inquires into citizen complaints of official misconduct." (Pitchess, supra, 11 Cal.3d at p. 534, 113 Cal.Rptr. 897, 522 P.2d 305, italics added.)
Pitchess discussed why such investigations were conducted. In Pitchess, an affidavit was received from a captain assigned to the administrative division of the sheriffs department. The affidavit stated that the "`purpose of these investigations is to enable the Department to ascertain the existence or non-existence of misconduct on the part of Sheriffs deputies .... The final results of these investigations and the information acquired from them are used in appropriate cases by the Office of the County Counsel as attorneys for the County of Los Angeles in connection with defending civil suits arising out of the incident investigated.'" (Pitchess, supra, 11 Cal.3d at p. 538, fn. 3, 113 Cal.Rptr. 897, 522 P.2d 305, italics added.)
Mooc observed that "A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a Pitchess motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records. (See Pen. Code, § 832.8.)" (Mooc, supra 26 Cal.4th at p. 1229, 114 Cal. Rptr.2d 482, 36 P.3d 21.)[12]

*820 c. Brady and Pitchess Distinguished.

As the foregoing discussion demonstrates, the scope of the kind of information accessible under Pitchess is, in some respects, broader than the scope of the kind of information accessible under Brady. Information is not accessible under Brady if the information is itself inadmissible and only might lead to admissible evidence; that is not true under Pitchess. Brady requires that the information be "favorable" to the defendant; Pitchess does not. We will deal with issues of materiality later. Thus, as to kind of information accessible, Brady evidence is, in some respects, a subset of Pitchess discovery.
On the other hand, the scope of the litigable issues for which information is accessible under Brady is broader than the scope of such issues for which information is accessible under Pitchess. Brady requires disclosure of favorable evidence which is material to any issue relating to guilt or punishment. Pitchess permits discovery only of information related to a particular issue(s) the materiality of which, to the subject matter involved in the pending litigation, previously has been established by the defendant's preliminary good faith showing in the Pitchess motion. As to the litigable issues for which information is accessible, those under Pitchess are a subset of those under Brady. And the scope of the source from which information is accessible under Brady is broader than the scope of the source from which information is accessible under Pitchess since, unlike the case under Brady, information discoverable under Pitchess is limited to that contained in a peace officer's personnel file.
Moreover, Pitchess and Brady clearly differ concerning the nature of "materiality" and its role. Under Pitchess, materiality is implicated by the requirement that the defendant make a preliminary good faith showing as to the discovery sought, setting forth the materiality thereof to the subject matter involved in the pending litigation. Whether that materiality has been set forth is a factor to be considered by a trial court in its determination of whether it will permit discovery, and by an appellate court if and when it is asked to address the issue of whether a trial court erred by denying a Pitchess motion. Whether any such error was prejudicial is a separate issue. Under Brady, materiality is defined by the requirement that the evidence itself be material. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. If evidence is material, prejudice is established. Further, the materiality determination under Pitchess is always a preconviction determination by the trial court subject to appellate review, but the materiality determination under Brady and its progeny, which requires consideration of whether the result of the proceeding would have been different, necessarily embraces a postconviction *821 perspective.[13]
The prosecutor's duty to disclose under Brady' and the trial court's duty to order discovery under Pitchess rest on separate federal due process and state law predicates, respectively, and are analytically independent. Whether information is "favorable" and "material" "evidence" for purposes of Brady with the result that its disclosure is mandated is determined without consideration as to whether that information is "material to the subject matter in the pending litigation" for purposes of Pitchess with the result that it is discoverable. The fact that, in the context of personnel files (even assuming arguendo, that the Brady rule extends to such files), an overlapping situation might arise in which evidence which is favorable and material for purposes of Brady might also happen to be information which was relevant and material "to the subject matter in the pending litigation" for purposes of Pitchess does not compel a contrary conclusion.
Moreover, if Brady were applicable to such files and evidence was favorable and material under Brady, the prosecution would have a self-executing constitutional duty to disclose such evidence apart from whether Northup, pursuant to state law discovery principles, requested, or made a showing of good cause for, that evidence. Pitchess does not impinge on Brady, or vice versa. (See Izazaga v. Superior Court (1991) 54 Cal.3d 356, 377-378, 285 Cal. Rptr. 231, 815 P.2d 304 [prosecutor's duties to disclose under Brady, and under state reciprocal discovery statute enacted as part of Proposition 115, are independent].)
Finally, the good faith showing required under Pitchess permits the trial court to review personnel files to determine whether an agency possesses information discoverable under Pitchess, and to order the disclosure thereof. However, a "true Brady violation" requires that favorable and material evidence must have been suppressed by the People, that is, no Brady violation has occurred unless the People in fact possessed such evidence.[14] And since Northup has the burden to demonstrate error from the record (In re Kathy P. (1979) 25 Cal.3d 91, 102, 157 Cal.Rptr. 874, 599 P.2d 65; People v. Garcia (1987) 195 Cal.App.3d 191, 198, 240 Cal.Rptr. 703; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 349, pp. 394-395), he has the burden of demonstrating a Brady violation and, in particular, the burden of affirmatively demonstrating that the People in fact possessed such evidence.

d. Application Of These Principles To This Case.

There are, as we have already noted, three components of a Brady violation: the evidence at issue must be favorable *822 to the accused; that evidence must have been suppressed by the State; and prejudice must have ensued. (Strickler v. Greene, supra, 527 U.S. at pp. 281-282, 119 S.Ct. 1936.) Northup claims that "in order for the prosecution to properly discharge its duty under Brady, it has an affirmative obligation in every case to investigate the personnel files of all significant police officer witnesses and to disclose to the defense any complaints which may either exculpate the defendant or impeach police officer witnesses." (Italics added.) We disagree; any prosecutorial duty under Brady would extend only to favorable and material evidence, and not to complaints which merely might be favorable.[15]
But we reject Northup's claim for more fundamental reasons. First, even assuming that the People possessed the personnel files at issue, Northup has failed to meet his burden of affirmatively demonstrating that those files contained any favorable and material evidence for purposes of Brady.
Second, the prosecutor did not, for purposes of Brady, possess any evidence that was in the files at issue. The sheriffs department, of course, investigates crimes. But the department does more than investigate crimes, and there is no evidence in the record that the personnel files at issue were being maintained by the department pursuant to a criminal investigation of Northup. Instead, they were maintained in the discharge of the department's administrative and supervisorial responsibilities with respect to its own sworn deputy personnel. Frequently, the contents of such files predate the offense with which a defendant requesting Pitchess information is charged. Misconduct investigations of deputies will likely predate the defendant's alleged offense, unless the alleged misconduct occurred during the defendant's alleged offense. Personnel files commonly contain matter irrelevant to a Pitchess motion. Even when such files contain information concerning citizen complaints discoverable under Pitchess, the files are maintained as part of an administrative investigation into alleged misconduct by deputies, and not as part of a criminal investigation into wrongdoing by a person who is not a deputy, such as Northup.
There is no evidence that the department maintained the personnel files at issue in its capacity as an agency investigating criminal wrongdoing, to assist the prosecution of Northup, or as the prosecution's agent in the prosecution's case against Northup. The department frequently conducts criminal investigations, but the record fails to demonstrate that any evidence in the files at issue was gathered, or maintained in said files, by the department as part of such a criminal investigation, much less one of Northup.[16]
*823 We conclude that, although the sheriffs department gathered the information in, and maintained, the personnel files at issue, the department, when discharging such administrative tasks, (1) was not "acting on the government's behalf in the case" (Kyles, supra, 514 U.S. at p. 437, 115 S.Ct. 1555, italics added) in which Northup is a defendant; (2) was not, in such administrative capacity, on the "prosecution team" (In re Brown, supra, 17 Cal.4th at p. 879, 72 Cal.Rptr.2d 698, 952 P.2d 715), that is, the team prosecuting Northup; and (3) had not been "used by the prosecutor ... to assist the prosecution ... in its work" (People v. Superior Court (Barrett), supra, 80 Cal.App.4th at p. 1315, 96 Cal.Rptr.2d 264, italics added). Therefore, the prosecutor did not possess the files at issue for purposes of Brady, and had no duty thereunder either to determine whether they contained favorable and material evidence, or to disclose any such evidence. No "suppression] [of any such evidence] by the State" occurred.

DISPOSITION
The judgment is affirmed.
We concur: KITCHING and ALDRICH, JJ.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] The Evidence Code sections codified Pitchess principles.
[2] Although the trial court issued such order, the court did not then expressly state that it was granting the motion to that extent. The March 7, 2000 minute order reflects, "Pitchess motion is argued. Counsel ... is present for the sheriff's department. The court rules as reflected in the notes of the court reporter."
[3] The court later ordered that a declaration be filed reflecting the information, or the fact that it did not exist if that were the case.
[4] On May 18, 2000, Northup filed an informal discovery demand on the People, "pursuant to Penal Code sections 1054 and 1054.5, subdivision (b), and the case of Izazaga v. Superior Court (1991) 54 Cal.3d 356, 285 Cal.Rptr. 231, 815 P.2d 304." It requested, inter alia, any exculpatory evidence, and "any information favorable to the defense in that it tends to exonerate the defendant, ... or constitutes information that the defense might use to impeach or contradict prosecution witnesses."
[5] Although the court did not then expressly state that, on March 7, 2000, it had granted Northup's Pitchess motion to any extent, the court did not, on May 26, 2000, dispute Northup when Northup characterized what happened on March 7, 2000, as the court granting in part, and denying in part, the Pitchess motion.
[6] The record reflects the following colloquy between counsel and the court: "[Defense Counsel]: ... [It] is my understanding, then, that the court has reviewed the documentation provided by the police agency and has found that none of the ... information that has been referred to the court by the police agency, ... relates to any of the information that has been requested in our motion? Is that the court's finding here? [¶] The Court: Yeah. I mean I'll even tell you this much more. The person that complained is not complaining that the officer planted evidence on him." The following then occurred: "[Defense Counsel]: But there's much more than just planting evidence asked for. Any act of moral turpitude, lying. [¶] The Court: I'm just telling you just for your information, it doesn't have anything to do with the complainant complaining that the officer framed him or put anything, you know, that would indicate[¶] [Defense Counsel]: Okay. But I just want to make sure[¶] The Court: Look, I'm just telling you that and I'm not going to tell you anymore. I'm telling you the rest of it is irrelevant and it wouldn't be relevant [sic] anyway. [¶] [Defense Counsel]: I want to make sure the court understands our motion is much broader than just planting evidence or trying to frame somebody. [¶] The Court: I understand your motion. I'm not going to say anything more to you."
[7] The May 26, 2000 minute order reflects, "Pitchess motion is heard.... The court has reviewed the documents and finds that there is no discovery to be delivered to the defense. ... The court orders the reviewed documents sealed, not to be opened unless by order of the court."
[8] Northup does not challenge on nonconstitutional grounds the trial court's rulings as to the Pitchess motions.
[9] United States v. Agurs, supra, states, "[i]n the first situation, ... the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." (United States v. Agurs, supra, 427 U.S. at p. 103, 96 S.Ct. 2392.) In the second situation, the prosecution suppressed evidence which was specifically requested by the defendant. (Id. at p. 104, 96 S.Ct. 2392.)
[10] In the preceding sentence, Strickler quotes Kyles as using the phrase, "in this case." In fact, Kyles used the phrase, "in the case." (Kyles v. Whitley, supra, 514 U.S. at p. 437, 115 S.Ct. 1555.)
[11] Although the nonitalicized language in the above sentence presents the possibility that an investigating agency might use another agency, that did not occur in the present case. An issue in the present case is whether the prosecutor used an agency to assist the prosecution in the prosecution's work.
[12] We note that People v. Superior Court (Barrett), supra, discussed Brady, Proposition 115, and Pitchess issues as background for Barrett's conclusion that a trial court's discovery order under Proposition 115 was partially erroneous. In Barrett, the California Department of Corrections (CDC) investigated a criminal homicide committed by a defendant in prison, and the trial court, pursuant to Proposition 115, granted the defendant's request for discovery of information possessed by CDC. Barrett concluded the order was proper to the extent it required CDC to disclose information it obtained when acting in the capacity of a criminal investigative agency investigating the defendant's commission of the homicide. But Barrett also concluded the order was improper to the extent it ordered disclosure of information possessed by CDC in its capacity as administrator of the prison, most of which information predated the homicide and were records kept by CDC in the course of running the prison. (People v. Superior Court (Barrett), supra, 80 Cal. App.4th at pp. 1317-1318, 96 Cal.Rptr.2d 264.)
[13] Kyles notes, however, that "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of `reasonable probability' is reached." (Kyles v. Whitley, supra, 514 U.S. at p. 437, 115 S.Ct. 1555, italics added.) In Kyles, a state argued that the materiality standard should be modified because it "`makes it difficult ... to know' from the `perspective [of the prosecutor at] trial ... exactly what might become important later on.'" (Id. at p. 438, 115 S.Ct. 1555.) Kyles rejected that argument. (Id. at pp. 438-440, 115 S.Ct. 1555.)
[14] As we have seen, Brady requires prosecutorial suppression of evidence. Agurs observed that Brady arguably applied in three situations; each involved the post-trial discovery of information known to the prosecution but unknown to the defense; and, in the third situation, the prosecutor was in the possession of exculpatory information. (United States v. Agurs, supra, 427 U.S. at p. 106, 96 S.Ct. 2392.)
[15] A subheading in the argument portion of Northup's opening brief asserts that "Brady mandates the prosecution [to] investigate and disclose all Pitchess evidence." Under that heading, Northup, discussing Brady, argues, "As Evidence Code section 1043 not only requires a defendant request material the prosecution is under a preexisting obligation to provide, but moreover demands a showing of good cause to compel such discovery, is thus unconstitutional in criminal cases." (Italics added.) (Sic.) Even assuming that a prosecutor's duty under Brady extends to personnel files of peace officers, Northup is mixing apples and oranges, in that he fails to recognize the analytical independence of Brady and Pitchess.
[16] We note that, during oral argument, Northup urged that Kyles, supra, "said that evidence that is possessed by the police is presumably possessed by the prosecution as well. That anyone who works in close connection with the prosecution for purposes of that prosecution to prosecute (sic ) that knowledge is imputed to the prosecution." No such language is found in Kyles, but the above italicized language concedes the necessity of a nexus between an agency from which disclosure is sought and the criminal prosecution of a defendant. We previously noted that Brown, supra, observed, "`The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.'" (Brown, supra, 17 Cal.4th at p. 879, 72 Cal.Rptr.2d 698, 952 P.2d 715, italics added.)