Filed 6/28/13  P. v. Perkins CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY LORAN PERKINS,<br><br>Defendant and Appellant. | F063997<br><br>(Super. Ct. No. MF009042A)<br><br>**O P I N I O N** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Leanne LeMon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P.J., Kane, J., and Peña, J.

A jury convicted appellant, Anthony Loran Perkins, of battery by a prison inmate on a correctional officer (Pen. Code,[1] § 4501.5). The court imposed a prison term of four years, to be served consecutively to the term appellant was serving at the time of the instant offense.

Prior to trial, appellant made a so-called *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3rd 531 (*Pitchess*)) for discovery of certain information and materials, including the personnel records of two named correctional officers. At an in camera hearing, the court denied the motion.

Also prior to trial, appellant made a motion pursuant to section 1054 et seq. to compel discovery of various materials including documents relating to certain correctional officers (discovery motion). The court granted the discovery motion as to certain items and denied it as to other items.

On appeal, appellant argues that the court erred in denying his discovery motion, and asks that this court review the in camera *Pitchess* proceeding and determine if the trial court erred in denying the *Pitchess* motion. We affirm.

## FACTS

Correctional Officer Richard Catlin testified to the following: On July 26, 2009 (July 26), appellant was a prisoner confined at California Correctional Institution in Tehachapi (CCI Tehachapi), and was in his cell, when Catlin, who was in the process of delivering a meal to appellant, heard appellant say something. Catlin, who was holding the food tray in his left hand and had just opened the food port, i.e., the opening in the cell door through which food is delivered to the inmate in the cell, leaned closer and, as he was handing the tray over, asked appellant what he had said. At that point, appellant grabbed the officer's left wrist and tried to pull it inside the food port. Catlin quickly

---

[1]     All statutory references are to the Penal Code.

broke free of appellant's grip. Appellant's hand was still outside the cell, so Catlin emptied his pepper spray canister into the cell. Catlin suffered scratches to his left wrist.

Correctional Officer Eric Barthelmes testified he saw the following on July 26: Officer Catlin unlocked the food port to appellant's cell and handed food trays into the cell, at which point a hand reached out of the cell and grabbed Catlin's arm. Catlin was able to break free, the hand remained outside the cell, and Catlin sprayed pepper spray at the arm inside the cell.

Michael Williams testified to the following: He was appellant's cell mate on July 26. On that date, he and appellant were in the cell when pepper spray was sprayed into the cell. At the time, appellant was near the back of the cell. Before the pepper spray was sprayed into the cell, Williams did not see appellant "crouching down, or kneeling down, or extending his arms outside of the food port," nor did Williams see appellant "struggling in any fashion near the food port ...."[2]

Appellant testified to the following: He did not "grab or assault a prison guard" on July 26. On that date, he and Williams were in their cell when he (appellant), who had just taken his tray from the "tray slot," was watching television and "heard the pepper spray sound." Appellant turned around and saw that Correctional Officer John Tingley had pepper sprayed Williams. Appellant did not see Officer Catlin near his cell at any time on July 26.

Officer Tingley testified to the following: On July 26, he heard a "code one issued over the radio ...." He responded, and upon arriving at appellant's cell, he smelled pepper spray. He encountered Officer Catlin, who "told [Tingley] it was [appellant]." Tingley did not spray the pepper spray into appellant's cell.

---

**2**      Here and in all other quotations from the trial transcript, unnecessary capitalization is omitted.

3

A prison nurse testified that approximately ten minutes after she examined Officer Catlin on July 26 and observed Catlin's scratches, she examined Officer Tingley, who "had an injury to his thumb." Tingley stated, "he wasn't sure how" he suffered the injury.

Officer Tingley did not recall if he was injured on July 26, nor did he recall speaking with the nurse.

## DISCUSSION

**The Discovery Motion**

Appellant, by his discovery motion, sought an order compelling the prosecution to produce certain "items," including the following: "Any disability, workman's compensation, or other type of financial assistance or benefit received by Richard Catlin, Javier Martinez, or Eric Barthelmes as a result of alleged incident";[3] "[a]ny time off requested by [any of the officers] as a result of alleged incident, whether [the officers] received pay while they were off"; "[b]illing and financial impact information as to how much [any of the officers] received or has claimed in connection to being a witness in this case, including costs for mileage, transportation, per diem, and any overtime"; "[b]illing and financial impact information as to how much correctional officer Trevor Stanley received or has claimed in connection to being a witness or investigating officer in this case, including costs for mileage, transportation, per diem, and any overtime"; and "[w]ork schedules for [each of the officers] for July 26, 2009, including but not limited to their specific assignment and rotation schedule between the hours of 1600 to 1800." The court denied the motion as to the items listed above. Appellant contends the court's denial of the discovery motion as to those items violated his constitutional due process rights under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). We disagree.

---

[3] We refer to Correctional Officers Catlin, Martinez and Barthelmes, collectively, as "the officers."

4

In *Brady*, the United States Supreme Court held that under the due process clause of the Fourteenth Amendment to the United States Constitution, the prosecution must disclose to the defense any evidence that (1) is "favorable to the accused," (2) "material," and (3) was "'suppressed' by the government." (*People v. Salazar* (2005) 35 Cal.4th 1031, 1047-1048.)

To meet the third of these requirements, it is not necessary that the defendant show the evidence was in the sole possession of the prosecutor. "Under *Brady*, the prosecutor's duty extends to evidence 'known to the others acting on the government's behalf.'" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1133, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22, quoting *Kyles v. Whitley* (1995) 514 U.S. 419, 437.) However "'the prosecution cannot reasonably be held responsible for evidence in the possession of *all* government agencies, including those not involved in the investigation or prosecution of the case.... "[I]nformation possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor does not have the duty to search for or to disclose such material." [Citation.]' (*In re Steele* (2004) 32 Cal.4th 682, 697; see also [*In re Brown* (1998)] 17 Cal.4th 873, 879 [*Brady* duty concerns evidence possessed by the "'"prosecution team,"'" which includes "'both investigative and prosecutorial personnel'"].)" (*People v. Zambrano*, *supra*, at p. 1133.)

In addition to the prosecution's obligations under *Brady*, under California's reciprocal discovery law (§ 1054 et seq.), prosecutors have a duty to disclose certain enumerated "materials and information" (§ 1054.1, 1st par.), including "Any exculpatory evidence" (§ 1054.1, subd. (e)), if such items are in the possession of the prosecutor or if the prosecutor knows them to be in the possession of "investigating agencies" (§ 1054, 1st par.). (*People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1312

5

(*Barrett*).) The prosecutor's duty under *Brady* is "independent from the statutory duty contained in section 1054.1, subdivision (e)." (*Barrett*, at p. 1314.)

Insofar as the record reveals, the discovery motion was based on statutory grounds rather than constitutional grounds. However, on appeal, appellant limits his argument to a claim of *Brady* error. We assume without deciding that claim is properly before us. We also assume without deciding that the materials in question were both "favorable" to appellant and "material" (*Brady*, *supra*, 373 U.S. at p. 87). Accordingly, we address the following question: Were the materials in question—which, the parties agree, were in the possession of the California Department of Corrections and Rehabilitation (CDCR)—suppressed by the prosecution? On this point, we find instructive *Barrett*, *supra*, 80 Cal.App.4th 1305.

In *Barrett*, a criminal defendant charged with the murder of his prison cellmate requested pretrial discovery from the Imperial County District Attorney of records maintained by the California Department of Corrections,[4] including logs from the administrative segregation unit and incident logs. (*Barrett*, *supra*, 80 Cal.App.4th at pp. 1309-1310.) After the trial court ordered the District Attorney to produce the materials, the District Attorney petitioned for a writ of prohibition. (*Id*. at p. 1309.) The appellate court held that the prosecution had no duty to produce most of these records because in maintaining them the CDC was not acting as an investigating agency. (*Id*. at pp. 1317-1320.)

The court explained: "[T]he status of CDC in this case is not straightforward. In addition to being an investigatory agency in the homicide prosecution, CDC first and foremost supervises, manages and controls the state prisons .... [Citations.] CDC is a

---

**4**      CDCR was, at the time of the *Barrett* decision, known as the California Department of Corrections (CDC).

6

distinct and separate governmental entity from the District Attorney.... Thus, for our purposes, CDC has a hybrid status: part investigatory agency, and part third party.

"With respect to CDC's role as an investigatory agency, [defendant] can only compel discovery of materials generated or maintained by CDC relating to its investigation of the ... homicide .... [Citation.] .... [¶] However, the bulk of the ... CDC documents ..., most of which predate the homicide, are records kept by CDC in the course of running the prison. [Citation.] [Defendant] cannot rely on [section 1054 et seq.] for discovery of materials from CDC that are strictly related to its operation of Calipatria State Prison, that is, materials CDC generated when it was not acting as part of the prosecution team. To the extent [defendant] is seeking records that CDC maintains in the regular course of running Calipatria State Prison, [defendant] is trying to obtain material from a third party. [Citation.]" (*Barrett*, *supra*, 80 Cal.App.4th at pp. 1317-1318, fn. omitted.) "We conclude that to obtain materials from CDC in its capacity as the administrator of the state prison system, [defendant] must resort to a subpoena duces tecum." (*Id*. at p. 1318.)

The materials in question here were records relating to the officers' financial benefits and work schedules. These materials did not relate to CDCR's investigation of the instant offense; rather the materials were "generated when [CDC] was not acting as part of the prosecution team." (*Barrett*, *supra*, 80 Cal.App.4th at p. 1318.) As indicated above, in determining if the prosecutor's duty under *Brady* extended beyond the prosecutor's office to other government agencies, courts have consistently "focus[ed] ... upon the 'prosecution team' ...." (*In re Brown*, *supra*, 17 Cal.4th at p. 879.) Here, as in *Barrett*, the CDCR did not have a duty to produce the materials at issue.

Appellant seeks to distinguish *Barrett*. He argues the CDCR records at issue here differed from those in *Barrett* because "they fell into an interstitial category: they were documents *that would normally have been kept in the course of business* by CDCR, but

7

because of the incident involving appellant, the documents were prepared with a dual purpose – as normal records prepared in the course of business *and* as investigation into a criminal matter." (First italics added.) However, although the documents may have been relevant to the charged offense, there is no indication they were prepared as part of the investigation of that offense. As indicated in the phrase set forth in the first set of italics in the passage quoted above, it is apparent the materials in question were prepared as a result of the CDCR's duty to administer CCI Tehachapi. Therefore, the prosecution did not have a duty to produce them. The court did not err in denying appellant's discovery motion.

**The *Pitchess* Motion**

As indicated above, on July 14, 2010, appellant filed a *Pitchess* motion to discover personnel files and other "materials" relating to Officers Catlin and Barthelmes. On September 8, 2010, the court, by written order, "grant[ed] the motion for *in camera* review by the court," and on November 3, 2010, the court conducted an in camera hearing. The court's minute order of that hearing states: "Cause proceeds with in camera hearing. [¶] Transcript of in camera proceeding ordered sealed. [¶] Motion for discovery is denied." (Unnecessary capitalization omitted.)

In his opening brief, appellant asks this court to independently review the sealed records pertaining to the *Pitchess* proceedings. The People effectively concede that such review is proper. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.)

"'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' [Citation.] A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both "'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that

8

the agency has the type of information sought."  [Citation.]'"  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.)

We have conducted an independent review of the transcript of the in camera hearing and the records produced at that hearing.  Based on our review, we conclude the court's ruling on the *Pitchess* motion did not constitute an abuse of discretion.

## DISPOSITION

The judgment is affirmed.