Filed 1/8/15  P. v. Garcia CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SATURENO DEHORTA GARCIA,<br><br>    Defendant and Appellant. | B251496<br><br>(Los Angeles County<br>Super. Ct. No. BA398780) |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. H. Rehm and Laura F. Priver, Judges.  Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann and Timothy Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Satureno Dehorta Garcia of conspiracy to sell a controlled substance (methamphetamine) (Pen. Code, § 182, subd. (a)(1)), possession for sale of a controlled substance (methamphetamine) (Health & Saf. Code, § 11378), and offer to sell a controlled substance (methamphetamine) (Health & Saf. Code, § 11379, subd. (a)).[1] The jury found true the special allegation as to each offense that the substance containing methamphetamine exceeded 1 kilogram (weight enhancement). (Health & Saf. Code, § 11370.4, subd. (b)(1).) The trial court struck the weight enhancement under Penal Code section 1385 as to all counts. It sentenced defendant to a term of four years in county jail for his offer to sell a controlled substance conviction and imposed and stayed, pursuant to Penal Code section 654, county jail terms of three and two years, respectively, for his conspiracy to sell a controlled substance and possession for sale of a controlled substance convictions. On appeal, defendant requests that we review the sealed transcript of the trial court's in camera hearing on his discovery motion for certain information concerning an undercover informant to determine if the trial court abused its discretion in denying the motion. He also contends that the trial court erred in failing to instruct the jury on the weight enhancement as to the conspiracy to sell a controlled substance charge. We affirm.

## BACKGROUND

Los Angeles County Sheriff's Department Deputy Anthony Ponce was assigned to a drug task force run by the Drug Enforcement Agency. Deputy Ponce used Carlos Astrudillo, a private investigator, in investigations. In May 2012, Astrudillo contacted Deputy Ponce and said that he had information about a group of narcotics traffickers. Astrudillo had been introduced by phone to "Tomas." Astrudillo and Tomas spoke about buying cocaine. Astrudillo never bought cocaine from Tomas, but Tomas introduced Astrudillo to Medina, whom Tomas said could help Astrudillo. Astrudillo called Medina

---

[1] Defendant's codefendants, Manuela Medina and Lucy Leyva, are not parties to this appeal.

and said that he was "in the business" and that he needed some crystal methamphetamine and cocaine. Medina said that she could help Astrudillo.

One or two weeks later, Medina called Astrudillo and said she had a family member who could provide him with "merchandise." Medina introduced Astrudillo to Leyva. Astrudillo told Leyva that he was looking for 10 kilograms of crystal methamphetamine and 12 kilograms of cocaine. Leyva said that the price of a kilogram of crystal methamphetamine was $23,000 and the price of a kilogram of cocaine was $20,000. Astrudillo and Leyva arranged for the sale to take place in Phoenix, Arizona. Astrudillo informed Deputy Ponce about his progress in the investigation.

On June 4, 2012, Astrudillo drove from Los Angeles to Phoenix. The next day, he called Leyva. She said that she was only able to locate 10 kilograms of crystal methamphetamine. Later that day, Astrudillo met with Medina and Leyva at a restaurant in Glendale, Arizona, where they discussed the mechanics of their transaction. Within a half an hour, a man joined Medina, Leyva, and Astrudillo at the restaurant.[2] Astrudillo told the man that he had the money to purchase 10 kilograms of methamphetamine. The man asked Medina and Leyva if they knew Astrudillo and whether they had "done any deal before." Leyva responded that they had not "done anything but we know him through the phone." The man said, "Well, if something happen, you know, you and your family going to respond."

Leyva made some phone calls. She told Astrudillo that the "merchandise was going to show up." Astrudillo waited in the restaurant for two and a half hours. Because "they" had not brought the methamphetamine to the restaurant by that time, Astrudillo left and drove back to Los Angeles.

Leyva called Astrudillo as he was driving back to Los Angeles. She apologized that the "merchandise" was not in Phoenix, and said that it was in Los Angeles. She offered to go to Los Angeles and deliver the "merchandise" to Astrudillo if he still wanted to complete the transaction. Astrudillo was angry that he had been made to wait

---

[2] Defendant was not the man who joined Medina, Leyva, and Astrudillo at the restaurant.

3

and said, "Well let me think about it." On June 11, 2012, Leyva called Astrudillo and said that she was planning to drive to Los Angeles to complete the transaction for the 10 kilograms of methamphetamine. Astrudillo told her to call him when she arrived.

Between 11:00 a.m. and noon on June 13, 2012, Astrudillo met with Deputy Ponce and other officers in a park on Peck Road near the 60 freeway. Deputy Ponce instructed Astrudillo that the transaction would take place at a nearby McDonald's. Astrudillo followed Deputy Ponce to the McDonald's. Astrudillo called Leyva to let her know his location. He asked her if she was ready. Leyva told Astrudillo that she was waiting for the "merchandise." She said that the persons who owned the methamphetamine wanted the initial transaction to be for two kilograms of methamphetamine. She said that if that transaction went well, "then we do the rest." She said she would call Astrudillo when she received the "merchandise."

Astrudillo waited at the McDonald's for about four hours. He spoke with Leyva who said that she and Medina had gotten lost and were at a McDonald's on Valley Boulevard near the 10 freeway. Astrudillo told Leyva to wait for him and that he would drive there. Astrudillo followed Deputy Ponce to the McDonald's on Valley Boulevard. When he arrived at the McDonald's, Astrudillo parked and went inside. Medina was sitting with defendant. Astrudillo was not surprised to see defendant because Leyva had told him that the man who owned the "dope" would be there. Leyva was not present.

Astrudillo greeted Medina and introduced himself to defendant. He asked about Leyva, and walked outside to call her when told she was at another location. Astrudillo called Leyva and said that he saw Medina with a man. Leyva said, "Yeah, that's the guy." Astrudillo asked Leyva, "Where are you?" She responded that she was at another location waiting for him. Shortly thereafter, Leyva arrived at the McDonald's on Valley Boulevard driving a Toyota Camry. Astrudillo commented that Leyva was driving a nice car. She responded, "Yeah this is the—this is the guy car." Defendant was the registered owner of the Camry.

Leyva asked Astrudillo if he was ready and if he had the money. Astrudillo responded that he did not have the money with him and he wanted to see the

4

"merchandise" first. Leyva said, "Okay, come to my car. Go to the passenger side and try to not let this guy see you that you're going into his car." Astrudillo entered the Camry and found a small box on the floor. He opened the box and saw four bags of "merchandise."

Astrudillo told Leyva that he was going to call his "guy" to bring the money. He then called Deputy Ponce and said, "It's good. It's good. Bring the money. You know where I am." Deputy Ponce and other officers arrived and arrested defendant, Medina, and Leyva. Deputy Ponce searched the Camry. Among other things, he found a wadded up piece of paper in the driver's side door that contained about 7.82 grams of methamphetamine.

The contents of the four bags Astrudillo found in the box in the Camry were tested and determined to be 1,785 grams (or 1.785 kilograms) of a solid substance containing methamphetamine. Deputy Ponce opined that the methamphetamine recovered from the Camry was possessed for sale.

## DISCUSSION

**I.      The Trial Court's in Camera Hearing on Defendant's Discovery Motion Concerning An Undercover Informant's Work in Other Cases**

Defendant requests that we review the sealed transcript of the trial court's in camera hearing on that part of his discovery motion that concerned the identity of the defendants in other cases on which an undercover informant worked to determine if the trial court abused its discretion in denying the motion. We have reviewed the reporter's transcript of the trial court's in camera hearing and have determined that the trial court did not abuse its discretion in denying the part of defendant's discovery motion at issue.

*A.      Background*

Defendant moved for pre-trial discovery of a copy of the undercover informant's criminal history; the undercover informant's full name and date of birth; and all information regarding cases that the undercover informant worked on with law

5

enforcement during the previous four years including the amount the undercover informant was paid, the identity of the defendant, the extent of the undercover informant's work, the result of the case, whether the undercover informant testified, and any corresponding police reports. The prosecutor objected only to discovery concerning the identity of the "suspects" in other cases on which the undercover informant worked. The trial court granted defendant's discovery request except as objected to by the prosecutor and set the matter for an in camera hearing concerning the contested part of defendant's discovery motion.

The trial court conducted an in camera hearing, and denied the contested part of defendant's discovery motion. After the hearing, the trial court ruled, "As to the time that this particular informant has worked with the Los Angeles County Sheriff's Department, it does not appear to the court that disclosure[3] of the individual identity of these previous suspects is going to compromise any of the defendant's constitutional rights or deprive him of a fair trial." It further ruled, "The Court after hearing the evidence provided in camera determined that providing this information can result in substantial danger to the informant, and the informant's family, and perhaps compromise the integrity of the assisting investigation."

### B.    *Standard of Review and Application of Relevant Principles*

We review a trial court's discovery orders for abuse of discretion. (*People v. Sarpas* (2014) 225 Cal.App.4th 1539, 1552.) Likewise, we review a trial court's ruling on an Evidence Code section 1040 claim of privilege to refuse to disclose official information for an abuse of discretion. (*People v. Suff* (2014) 58 Cal.4th 1013, 1059.)

"'A public entity has a privilege to refuse to disclose official information' (Evid. Code, § 1040, subd. (b)) if '[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . .' (*Id.,* subd. (b) (2).)"

---

**3**      The trial court appears to have intended to say "nondisclosure."

6

(*People v. Suff, supra,* 58 Cal.4th at p. 1059.) When a governmental agency makes a claim of privilege for nondisclosure of official information, the trial court should hold an in camera hearing to review the claim. (*People v. Superior Court* (2000) 80 Cal.App.4th 1305, 1316.) It is the governmental agency's burden to demonstrate that the privilege applies. (*Ibid.*)

We have reviewed the reporter's transcript of the trial court's in camera hearing. The trial court did not abuse its discretion in denying the part of defendant's discovery motion that concerned the identity of the defendants in other cases on which the undercover informant worked.

**II.     The Trial Court's Failure to Instruct on the Weight Enhancement as to the Conspiracy to Sell a Controlled Substance Charge**

Defendant contends that the trial court erred in failing to instruct the jury on the Health and Safety Code section 11370.4, subdivision (b)(1)[4] weight enhancement as to the conspiracy to sell a controlled substance charge. Due to its failure, defendant argues, the trial court failed to instruct the jury that it had to find that he was "substantially involved in the planning, direction, execution, or financing of the underlying offense" to find true the weight enhancement as to the conspiracy charge.[5] Defendant argues that the

_____

[4]     Health and Safety Code section 11370.4, subdivision (b)(1) provides: "Any person convicted of a violation of, or of conspiracy to violate, Section 11378, 11378.5, 11379, or 11379.5 with respect to a substance containing methamphetamine, amphetamine, phencyclidine (PCP) and its analogs shall receive an additional term as follows:
        "(1) Where the substance exceeds one kilogram by weight, or 30 liters by liquid volume, the person shall receive an additional term of three years.
        "[¶]-[¶]
        "The conspiracy enhancements provided for in this subdivision shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense."

[5]     We note that the trial court did not instruct the jury on the weight enhancement at all as to any of the other charged offenses, an omission defendant does not raise on

7

trial court's error was not harmless beyond a reasonable doubt and that we therefore must strike the jury's true finding on the weight enhancement as to his conspiracy conviction. We asked the parties to submit supplemental briefs addressing whether defendant's contention on appeal is moot because the trial court struck the weight enhancement as to all of defendant's convictions, including defendant's conspiracy conviction.

"A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief." (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503; *Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178 ["Generally, courts decide only 'actual controversies' which will result in a judgment that offers relief to the parties. [Citations.]"].) Thus, as a rule, appellate courts will not render opinions on moot questions." (*Ebensteiner Co., Inc. v. Chadmar Group, supra,* 143 Cal.App.4th at pp. 1178-1179.)

Defendant seeks to have the jury's true finding on the Health and Safety Code section 11370.4, subdivision (b)(1) weight enhancement stricken as to his conspiracy to sell a controlled substance conviction. Because the trial court struck the weight enhancement as to all of defendant's convictions, including defendant's conspiracy conviction, at defendant's sentencing hearing, defendant's appeal with respect to this issue is moot. (*Simi Corp. v. Garamendi, supra,* 109 Cal.App.4th at p. 1503; *Ebensteiner Co., Inc. v. Chadmar Group, supra,* 143 Cal.App.4th at p. 1178.)

---

appeal, apparently due to the substantial evidence supporting the jury's finding that the methamphetamine involved in the case exceeded 1 kilogram.

8

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

9