Filed 6/30/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| IAR SYSTEMS SOFTWARE, INC. et al.,<br><br>　　　Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>　　　Respondent;<br><br>NADIM SHEHAYED et al.,<br><br>　　　Real Parties in Interest. | A149087<br><br>(San Mateo County<br>　Super. Ct. No. SC083255A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING, CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on June 5, 2017, and reported in the Official Reports (2017 Cal. App. LEXIS 512) be modified in the following particulars.

1.  In the opinion filed June 5, 2017 at page 5, the strikeouts shown below are deleted and the underlined words are added:

    IAR asked Steven Smith, who had provided basic accounting and tax services to IAR ~~since~~ **in 2011** ~~2012~~, to provide the needed information and expertise to understand defendant's crimes.

2.  In the opinion filed June 5, 2017 at page 5, the strikeouts shown below are deleted and the underlined words are added:

    Subsequently, IAR, not Valla, retained Smith to serve as expert witness in the civil action against defendant.[fn omitted.]  Smith testified at the preliminary hearing in this matter, after ~~being prepared to do so by~~ **reviewing the evidence with** the district attorney.

1

3. In the opinion filed June 5, 2017 at page 5, the strikeouts shown below are deleted:

Later, Valla provided the district attorney with a copy of defendant's deposition transcript with portions underlined; however, there was no evidence that the district attorney requested this evidence, or that Valla underlined portions of the transcript ~~for, or~~ at the request of~~,~~ anyone in law enforcement.

4. In the opinion filed June 5, 2017 at page 6, the underlined words are added:

Following this call, the district attorney, who lacked a background in civil law, asked for citations "to the cases and statutes [that Purcell] mentioned were on point with the Shehayed criminal case," and Valla complied by emailing the district attorney copies of statutes from the Civil Code that included case citations **and some analysis of Valla's thoughts on the ratification defense**.

5. In the opinion filed June 5, 2017 at page 16, the underlined words are added:

For example, with respect to the sharing of legal authority, it appears Valla did no more than share a handful of legal citations **and some analysis** relating to **Valla's thoughts on** the ratification defense based on the research the firm had already undertaken in the civil action it was pursuing against defendant on its client's behalf – a task that took only about five or 10 minutes.

6. In the opinion filed June 5, 2017 at page 16, the strikeouts shown below are deleted and the underlined words are added:

Contrary to the trial court's finding, however, the firm did not undertake on behalf of, ~~or provide to~~, **or at the direction of** the district attorney any legal analysis, the sort of cooperation that, under the case law, might place a private party under the prosecution-team umbrella.

7. In the opinion filed June 5, 2017 at page 16, the strikeouts shown below are deleted and the underlined words are added:

Further, the accountant ultimately retained by IAR , Steven Smith, had provided routine accounting and tax services to IAR ~~since~~ **in 2011** ~~2012~~ (to wit, before law enforcement began investigating the underlying crimes in this case), and ~~had been~~ **was** designated by IAR as an expert witness in the civil action against defendant in 2013.

8. In the opinion filed June 5, 2017 at page 17, the strikeouts shown below are deleted and the underlined words are added:

   While it is true that Valla later gave law enforcement a copy of defendant's deposition transcript with certain portions underlined, there is no evidence that Valla asked any question during defendant's deposition at the direction of the police, or shared or highlighted deposition testimony ~~for any reason other than its own preparation in the civil matter~~ **at the request or direction of the police**.

9. In the opinion filed June 5, 2017 at page 21, the strikeouts shown below are deleted and the underlined words are added. Since this occurs in the disposition part of the opinion, we deem this to be a change in judgment.

   A peremptory writ of mandate is entered directing the trial court to set aside and vacate its order of ~~February 8~~ **August 16**, 2016, with the instruction to enter a new order finding that petitioner Valla & Associates is not part of the prosecution team in this case for purposes of *Brady v. Maryland* (1963) 373 U.S. 83, 87.

This modification changes the judgment. The Petition for Rehearing is denied.

DATE: _____          _____Acting P. J.

3

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| IAR SYSTEMS SOFTWARE, INC. et al., | |
|      Petitioners, | |
| v. | A149087 |
| THE SUPERIOR COURT OF SAN MATEO COUNTY, | (San Mateo County |
|      Respondent; |   Super. Ct. No. SC083255A) |
| NADIM SHEHAYED et al., | |
|      Real Parties in Interest. | |

In these writ proceedings, petitioners IAR Systems Software, Inc. (IAR) and Valla and Associates, Inc. (Valla), seek a writ of mandate ordering the trial court to vacate its finding of June 30, 2016, that Valla, a law firm, should be deemed part of the "prosecution team" prosecuting Nadim Shehayed for embezzlement. In addition, petitioners request that we set aside the related order granting the motion of defendant and real party in interest, Nadim Shehayed (defendant) to order Valla, as part of the prosecution team, to disclose material, exculpatory evidence in its possession in accordance with *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). For reasons addressed below, we agree the trial court erred, first, in imposing a duty under *Brady* to disclose material, exculpatory evidence directly on Valla, as opposed to on the prosecution, and, second, in finding Valla to be part of the prosecution team. Accordingly, we grant the requested relief.

1

# FACTUAL AND PROCEDURAL BACKGROUND

Defendant served as Chief Executive Officer of IAR for nearly 20 years.[1] Sometime around 2012, IAR discovered evidence that defendant had embezzled large sums of money from the corporation by, among other things, paying personal debts from the corporation's bank accounts and paying salary and retirement benefits to his wife, who was not an IAR employee. Accordingly, on September 7, 2012, IAR, represented by Valla, filed a civil lawsuit against defendant in San Mateo County Superior Court. In October 2012, Valla, on behalf of IAR, made contact with the Foster City Police Department to report the suspected crime(s). Trial in the civil case was then set for September 9, 2013. Just days before this first trial date, the San Mateo District Attorney (district attorney) charged defendant with felony embezzlement.[2]

On May 18, 2015, following an extensive preliminary hearing, the People filed this criminal action, charging defendant by information with six counts of embezzlement (Pen. Code, § 504), enhanced with allegations of excessive taking within the meaning of Penal Code sections 1203.045, subdivision (a), and 12022.6, subdivision (a).[3]

On July 19, 2015, defendant served its first subpoena on Valla, requesting 19 categories of documents. On August 12, 2015, at a scheduled hearing, Valla responded in part to this subpoena by producing over 600 documents in electronic form, while moving to quash other document requests on attorney-client privilege grounds. The motion to quash was ultimately resolved when defendant agreed to narrow his document requests. He then filed a second subpoena on September 29, 2015, that demanded production of documents relating to a February 6, 2014 email from the district attorney to Valla. Valla, in turn, responded by moving for a protective order with respect to documents protected by either the attorney-client or work-product privilege.

---

[1]     IAR is the American subsidiary of parent corporation, IAR Sweden, which is not a party to these proceedings.

[2]     After several continuances, a jury trial in this civil matter has been set for August 28, 2017.

[3]     Unless otherwise stated, all statutory citations herein are to the Penal Code.

On December 2, 2015, defendant filed the motion at the heart of these writ proceedings, seeking an evidentiary hearing to determine whether Valla was part of the prosecution team and, as such, subject to the *Brady* disclosure requirement of producing any material and exculpatory evidence in its possession notwithstanding the attorney-client privilege.  The previously-filed motion for protective order was thus taken off calendar and a new hearing was scheduled on February 8, 2016, to permit the People to file a written opposition.  At this hearing, the court summarily scheduled an evidentiary hearing with respect to the *Brady* issue for April 18, 2016.

On March 21, 2016, petitioners filed a petition in this court requesting that we set aside and vacate the February 8, 2016 order for an evidentiary hearing, arguing that this hearing would violate the constitutional right of a victim (to wit, IAR) to reasonably confer with the prosecutor regarding the charged offenses, as well as IAR's right to the protection of the attorney-client and work-product privileges.  In addition, petitioners argued that, as a matter of law, the attorney for a crime victim cannot be deemed part of the prosecution team.  We denied this writ petition without prejudice, advising petitioners of their right to renew it if appropriate after the scheduled evidentiary hearing.

The evidentiary hearing was thus held on May 4 and June 13, 2016.  Among other things, Antonio Valla, the founder of Valla, testified that the firm did not conduct legal research or investigate the charged offenses solely at the request of the police or district attorney or take any action with respect to defendant other than in its role as attorneys for IAR.  To the contrary, Valla merely turned over information to law enforcement that it had independently obtained in discovery in the civil action brought against defendant.  Further, Michael Purcell, a legal associate at Valla, testified that the firm did not ask the police or district attorney for assistance in the civil discovery process or in its legal research in the civil matter, nor did the firm have any sort of agreement with these agencies.  Rather, the firm arranged and scheduled meetings between the police and district attorney and its client, IAR, and provided these agencies with information that was already in its or its client's possession.

Both Elizabeth Nardi and Kimberly Perrotti, San Mateo County deputy district attorneys, confirmed this testimony. While it was standard procedure for the district attorney's office to communicate with a crime victim (here, IAR) through its attorneys, they did not ask Valla in this case to gather evidence, interview witnesses or find specific witnesses on its behalf. Similarly, Detective William Beck of the Foster City Police Department testified that the police conducted its own investigation without guidance from Valla, and did not ask Valla to gather specific evidence, make specific discovery requests or talk to specific witnesses. Valla did, however, forward a copy of defendant's deposition transcript to the police.

With respect to IAR's selection and hiring of a forensic accountant, deputy district attorney Nardi wrote an email to Valla on June 20, 2013, noting the financial complexity of the case against defendant and describing the impediments her office faced in determining whether to bring charges against him:

"Obviously, an embezzlement case of this magnitude which spans nearly a decade involves a lot of paperwork and financial analysis. Our office does not have the resources to interpret the voluminous financial documents nor is that our role. Our role is [sic] take what documents and/or other evidence a police agency presents to our office (in any criminal matter – murder, embezzlement, DUI, etc.) and determine if there is enough evidence to prove to a jury of twelve beyond a reasonable doubt that a crime has been committed.

"As such, a case of this complexity is impossible to prove without an independent financial audit. I cannot compel you to hire an auditor nor can I direct Foster City PD to hire an independent financial auditor. While our office works with police agencies, we are not their boss and cannot direct them on how to conduct a criminal investigation. The District Attorney's role is to take the information that is presented to us and make a determination if we can pursue criminal charges. That being said, if IAR does go forward with an independent financial audit, the company needs to hire someone who will be available to testify in San Mateo County. While IAR is a global company the

4

forensic auditor would be our 'star witness' at the Preliminary Hearing stage as well as a jury trial (should the case come to that) and needs to be available to testify."

At the hearing, Mr. Valla testified his understanding of deputy Nardi's email was that the district attorney was requesting that IAR provide information and expertise from an independent financial auditor retained by IAR. Detective Beck, in turn, testified that the responsibility for obtaining and paying a forensic accountant was "delegated to IAR via Valla . . . ." IAR asked Steven Smith, who had provided basic accounting and tax services to IAR since 2012, to provide the needed information and expertise to understand defendant's crimes. Subsequently, IAR, not Valla, retained Smith to serve as expert witness in the civil action against defendant.[4] Smith testified at the preliminary hearing in this matter, after being prepared to do so by the district attorney. IAR paid Smith for his services in both the criminal and civil matter, which mainly consisted of reporting on defendant's credit card expenses and identifying which were likely personal in nature as opposed to business in nature.

The evidentiary hearing revealed several instances of cooperation between the police or district attorney and Valla. For example, on July 18, 2013, Purcell, a legal associate at Valla, emailed Detective Beck, asking for Penal Code citations for the offenses that would likely be charged to defendant, explaining that the firm might try to work the elements of the charged offenses into its upcoming deposition of defendant. The police thereafter responded with two Penal Code citations, but did not suggest or request any particular deposition questions relating to these provisions. Later, Valla provided the district attorney with a copy of defendant's deposition transcript with

---

[4] There was also evidence that, earlier, in December 2012, the Foster City Police Department asked Valla whether there was a forensic accountant from Deloitte who could explain data taken from defendant's computer so that the police could prepare a search warrant. As the record reflects, a Swedish affiliate of Deloitte had served as auditor for IAR's parent company, and had been responsible for recovering certain files from defendant's computer. Mr. Valla responded that Deloitte should be able to assist in this task, while cautioning police that "Deloitte is expensive as I told you, so if you need to speak with them, I suggest video or voice conference."

5

portions underlined; however, there was no evidence that the district attorney requested this evidence, or that Valla underlined portions of the transcript for, or at the request of, anyone in law enforcement.

In addition, on February 6, 2014, the district attorney emailed the firm to request that, at an upcoming meeting, IAR employees be available to discuss, among other things, "how [the Civil Code sections relating to ratification] may or may not affect [sic] the 'ratification' defense. My office has concerns about this possible defense since Shehayed was able to get away with misappropriating funds without anyone noticing. Hopefully, the IAR employees will be able to shed more light on this area." This request from the district attorney followed her receipt of a communication from defense counsel in which counsel argued that defendant's alleged acts of embezzlement had been authorized or ratified by IAR.

The record reflects that the ratification defense was later discussed in a phone call between the district attorney and Valla associate, Michael Purcell. Following this call, the district attorney, who lacked a background in civil law, asked for citations "to the cases and statutes [that Purcell] mentioned were on point with the Shehayed criminal case," and Valla complied by emailing the district attorney copies of statutes from the Civil Code that included case citations. At the hearing, Valla explained that it had spent only five or ten minutes crafting this response, as the firm had already researched these statutes in connection with the civil case against defendant.

Following the evidentiary hearing, the trial court granted defendant's motion. Specifically, on August 16, 2016, the court issued an order finding Valla to be a part of the prosecution team, noting, in particular, the email correspondence between Valla and law enforcement relating to the hiring of a forensic accountant, and to the identification and exchange of legal authority. The court thus ruled that "Valla & Associates are required to comply with *Brady* requirements. Informal discovery requests can be sent to them, and they will be expected to respond accordingly."

In August 19, 2016, Valla and IAR filed this petition for writ of mandate asking this court to direct the trial court to vacate its determination that Valla is part of the

6

prosecution team, and to enter a new order denying defendant's motion. The People subsequently joined in their request for relief arguing, like petitioners, that the court's finding that Valla was part of the prosecution team for purposes of *Brady* is erroneous as a matter of law.

## DISCUSSION

Petitioners seek writ relief on the ground that the trial court erred as a matter of law in concluding that Valla, attorneys for IAR, the victim of defendant's financial crimes, is part of the prosecution team for purposes of the duty under *Brady* to disclose any material, exculpatory evidence in its possession. Specifically, they challenge the trial court's finding that Valla is part of the prosecution team because, "in their zeal to represent their client, IAR US, Valla and Associates interjected themselves into and made themselves part of the prosecution team. . . . and in some cases it would appear that their interjection was welcomed by the District Attorney's office." For reasons set forth below, we agree the trial court erred.[5]

In making the determination that Valla is part of the prosecution team and requiring Valla to comply with *Brady*, the trial court relied primarily upon three factors. First, the court relied upon email correspondence between the district attorney's office and Valla beginning on February 6, 2014 (described above), in which the deputy district attorney asked Valla to provide case citations for the so-called ratification defense, which defense counsel had indicated that it would assert. Second, the court relied upon the July 2013 correspondence between Valla associate, Michael Purcell, and Detective Beck, wherein Purcell asked for a list of the crimes that would likely be charged to defendant so that Valla could explore the elements of them in defendant's upcoming deposition in the

---

[5] Petitioners also contend the trial court erred as a threshold matter by ordering an evidentiary hearing to determine whether Valla was in fact acting as part of the prosecution team because, as a matter of law, a crime victim's attorney cannot be deemed part of the prosecution team. However, because we agree with their broader argument that, on this record, Valla cannot be deemed part of the prosecution team, we need not address whether the mere holding of an evidentiary hearing on this issue was improper (an issue that, in any event, appears moot at this point).

7

civil action.  And lastly, the court relied upon ongoing communications between Valla, the police and the district attorney relating to the government's need — and inability to pay — for a forensic accountant to analyze the complicated financial data that would establish defendant's guilt.  At the same time, the court declined to rule on the related issue of whether the attorney-client privilege or work-product doctrine would ultimately override any obligation to disclose evidence under *Brady*.

We address the trial court's order, first, to the extent it requires Valla to make disclosures in accordance with *Brady* and, second, to the extent it relies on these particular three factors, after first setting forth the applicable legal framework.

## I.    Standard of Review.

Generally speaking, a trial court's ruling on discovery matters is reviewed for abuse of discretion.  (*People v. Ayala* (2000) 23 Cal.4th 225, 299.)  "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)  However, the duty to disclose under *Brady* is not a discovery rule, but a due process requirement:  "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." (*United States v. Bagley* (1985) 473 U.S. 667, 675); see also *Weatherford v. Bursey* (1977) 429 U.S. 545, 559-560 ["There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one . . . 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded' "].)  As such, the abuse of discretion standard for discovery rulings does not apply.  Rather, whether *Brady* applies is a legal matter, reviewed de novo. (*People v. Uribe* (2008) 162 Cal.App.4th 1457, 1473.)  At the same time, the trial court's factual findings are, as usual, reviewed for substantial evidence. (*People v. Superior Court (Hartway)* (1977) 19 Cal.3d 338, 350 fn. 6.)

## II.    *Brady v. Maryland* **(1963) 373 U.S. 83 (*Brady*).**

" ' "The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant" when the evidence is "both favorable

8

to the defendant and material on either guilt or punishment." [Citations.] Evidence is "favorable" if it hurts the prosecution or helps the defense. [Citation.] "Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' " [Citations.]' (*People v. Earp* (1999) 20 Cal.4th 826, 866 [85 Cal.Rptr.2d 857, 978 P.2d 15]; see, e.g., *United States v. Bagley* (1985) 473 U.S. 667, 674-678 [87 L.Ed.2d 481, 105 S.Ct. 3375 (*Bagley*); *Brady, supra,* 373 U.S. at p. 87; *In re Sassounian* (1995) 9 Cal.4th 535, 543-545 [37 Cal.Rptr.2d 446, 887 P.2d 527].)' " (*People v. Superior Court* (*Meraz*) (2008) 163 Cal.App.4th 28, 47.)

"A prosecutor's duty under *Brady* to disclose material exculpatory evidence extends to evidence the prosecutor — or the prosecution team — knowingly possesses or has the right to possess. The prosecution team includes both investigative and prosecutorial agencies and personnel. [Citation.] In *Kyles v. Whitley* (1995) 514 U.S. 419, 437-438 [115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490], the Supreme Court held that a prosecutor has a duty to learn of favorable evidence known to other prosecutorial and investigative agencies acting on the prosecution's behalf, including police agencies. The scope of the prosecutorial duty to disclose encompasses exculpatory evidence possessed by investigative agencies to which the prosecutor has reasonable access. [Citation.]" (*People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1314-1315 [*Barrett*].)

"A prosecutor has a duty to search for and disclose exculpatory evidence if the evidence is possessed by a person or agency that has been used by the prosecutor or the investigating agency to assist the prosecution or the investigating agency in its work. The important determinant is whether the person or agency has been 'acting on the government's behalf' (*Kyles v. Whitley, supra*, 514 U.S. at p. 437 [115 S. Ct. at p. 1567]) or 'assisting the government's case.' [Citation.] [¶] Conversely, a prosecutor does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the

9

prosecution team, and the prosecutor does not have the duty to search for or to disclose such material." (*Barrett, supra*, 80 Cal.App.4th at p. 1315.)

" '[T]he duty to disclose exists regardless of whether there has been a request by the accused, and the suppression of evidence that is materially favorable to the accused violates due process regardless of whether it was intentional, negligent, or inadvertent. [Citations.]' [Citation.]" (*People v. Superior Court* (*Meraz*), *supra*, 163 Cal.App.4th at pp. 47-48.)

Applying these legal principles to the record before us, we first find error in the trial court's order to the extent it purports to require Valla – as opposed to the prosecution – to comply with *Brady* requirements by responding to informal discovery requests sent directly to them. "[T]he Supreme Court has unambiguously assigned the duty to disclose [under *Brady*] solely and exclusively to the prosecution; those assisting the government's case are no more than its agents. (*Kyles, supra*, 514 U.S. at p. 438 [115 S.Ct. at p. 1568]; [citations].) By necessary implication, the duty is nondelegable at least to the extent the prosecution remains responsible for any lapse in compliance. Since the prosecution must bear the consequences of its own failure to disclose [citations], a fortiori, it must be charged with any negligence on the part of other agencies acting in its behalf [citations]. Accordingly, the risk and consequences of nonreceipt must fall to the prosecution." (*In re Brown* (1998) 17 Cal.4th 873, 881-882.) "Although rigorous, we do not perceive the duty imposed by *Brady* as too onerous. [Citations.] 'Obviously some burden is placed on the shoulders of the prosecutor when he is required to be responsible for those persons who are directly assisting him in bringing an accused to justice. But this burden is the essence of due process of law. It is the State that tries a man, and it is the State that must insure that the trial is fair.' [Citations.] This obligation serves 'to justify trust in the prosecutor as 'the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." ' (*Kyles, supra*, 514 U.S. at p. 439 [115 S.Ct. at p. 1568] . . . .) It also tends 'to preserve the criminal trial, as distinct from the prosecutor's private deliberations [or some other agency's independent assessment of materiality], as the chosen forum for ascertaining the truth

10

about criminal accusations. [Citations.]' (*Kyles, supra*, 514 U.S. at p. 440 [115 S.Ct. at p. 1568]; [*U.S. v.*] *Alvarez* [9th Cir. 1996]*, supra*, 86 F.3d [901] at p. 905.)" (*In re Brown, supra*, 17 Cal.4th at p. 883.)  As such, we conclude the trial court committed legal error by imposing any duty under *Brady* to disclose material, exculpatory evidence directly on Valla, as opposed to on the prosecution.  As explained above, *Brady* is not a discovery rule, but a requirement of due process.  (*United States v. Bagley, supra,* 473 U.S. at p. 675.)

At the same time, however, there remains at play the separate issue of whether Valla may be deemed part of the prosecution team for purposes of *Brady*, such that *the prosecution* can be required to search for and disclose *Brady* materials under Valla's possession or control.  The trial court, in finding Valla to be part of the prosecution team for purposes of *Brady*, and, as such, under a duty to disclose exculpatory evidence, employed the "totality of the circumstances" test set forth by the federal district court for the Southern District of New York in *United States v. Meregildo* (S.D.N.Y. 2013) 920 F.Supp.2d 434 (*Meregildo*).  There, the defendant called upon the district court to find that a cooperating witness was part of the prosecution team.  In declining to do so, the court first made the point that the disclosure requirements under *Brady* stem from the unique role the government plays in criminal prosecutions.  (*Id*. at p. 439 ["[*Brady*] obligations prevent the Government from exploiting its position to obtain an unfair advantage at trial"]; see also *Strickler v. Greene* (1999) 527 U.S. 263, 281 ["[w]ithin the federal system, for example, we have said that the United States Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done' "].)  Then, following a lengthy discussion of the relevant case law, the district court ultimately identified the following legal framework:
"There is no clear test to determine when an individual is a member of the prosecution team.  See *United States v. Zagari*, 111 F.3d 307, 320 fn. 13 (2d Cir. 1997) ('The extent to which knowledge may be imputed from one federal investigative agency to another for

11

*Brady* purposes is as yet unclear.'); [citations]). [¶] A prosecution team may have many members with different responsibilities. At its core, members of the team perform investigative duties and make strategic decisions about the prosecution of the case. See, e.g., *Kyles*, 514 U.S. at 438 (police investigator); *Giglio [v. U.S.* (1972)], 405 U.S. [150] at [p.] 154 (fellow prosecutor). The prosecution team may also include individuals who are not strategic decision-makers. See, e.g., *United States v. Bin Laden* 397 F.Supp.2d 465, 481 (S.D.N.Y. 2005) (finding that agents of the United States Marshals Service's Witness Security Program were members of the prosecution team because, at the prosecutors' request, the agents installed and continuously operated video-teleconference equipment 'in order to further the Government's investigation'). Those may include testifying police officers and federal agents who submit to the direction of the prosecutor and aid in the Government's investigation. *Pina* [*v. Henderson* (2d Cir. 1985)], 752 F.2d [47] at [p.] 47; *Bin Laden*, 397 F.Supp.2d at 481. But the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation. [*U.S. v. Locascio* (2d Cir. 1993)], 6 F.3d [924] at [p.] 949; [*U.S. v. Quinn* (2d Cir. 1971)], 445 F.2d [940] at [p.] 944; *Pina*, 752 F.2d at 47. And, even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper. See *United States v. Stewart*, 323 F.Supp.2d 606, 616-18 (S.D.N.Y. 2004) (declining to impute knowledge of a forensic expert from the Secret Service lab who provided trial support for the prosecution and testified as an expert); see also, e.g., *United States v. Persico, No. 84 Cr. 809 (JFK)* 1993 U.S. Dist.LEXIS 13640, 1993 WL 385799, at *6 (S.D.N.Y. Sept. 29, 1993) (declining to impute a case agent's knowledge of a Government witness's illegal actions)." (*Meregildo, supra,* 920 F.Supp.2d at pp. 441-442. Accord *Barnett v. Superior Court* (2010) 50 Cal.4th 890, 904 [borrowing the following three-part *Brady* inquiry from federal case law when deciding the analogous issue of whether a defendant sentenced to death was entitled to postconviction discovery under section 1054.9: " '(1) whether the party with knowledge of the information is acting on the government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a

12

"joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.' [Citations.]"].)

The federal district court also identified several limitations on whether an individual or entity could be deemed part of the prosecution team under the totality-of-the-circumstances test: "Interacting with the prosecution team, without more, does not make someone a team member. *Stewart*, 323 F.Supp.2d at 616-18. Instead, under the totality of the circumstances, the more involved individuals are with the prosecutor, the more likely they are team members. *Stewart*, 323 F.Supp.2d at 616-18. Among many others, these circumstances include whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy. See, e.g., *United States v. Diaz*, 176 F.3d 52 106-07 (2d Cir. 1999). In some cases, when an individual is significantly involved with the prosecution, the presence of a single factor may warrant imputation. Cf. *United States v. Stein*, 488 F.Supp.2d 350, 364 (S.D.N.Y. 2007) (holding that materials in corporation's files are within government's 'control' for Rule 16 purposes because of cooperation agreement). In other cases, when an individual's involvement is minor, even the presence of many factors will not warrant imputation. See, e.g., *Stewart*, 323 F.Supp.2d at 616-18. Ultimately, no single factor is the touchstone for imputation. *Bin Laden*, 397 F.Supp.2d at 481." (*Meregildo, supra,* 920 F.Supp.2d at pp. 441-442.) We find the federal court's analytic framework persuasive.

To begin with, we accept petitioners' point that there is no published decision in California or elsewhere holding that a private party that is also a crime victim qualifies as a member of the prosecution team for purposes of *Brady*. Indeed, defendant has directed us to no such case; nor have we found one. This likely reflects two factors. First, as noted above, the *Brady* rule arises from the unique role prosecutors and their agents play in our criminal justice system, which courts have recognized justifies *Brady*'s heightened disclosure requirements. (E.g., *Strickler v. Greene, supra,* 527 U.S. at p. 281.) However, crime victims and their attorneys, like IAR and Valla, are also uniquely positioned in our criminal justice system. As petitioners point out, the California Constitution affords

13

crime victims certain unique rights, including the right to refuse to cooperate with the prosecution and, of particular significance here, the right "to reasonably confer with the prosecuting agency, upon request, regarding, the arrest of the defendant . . . [and] the charges filed . . . ." (Cal. Const., art. I, § 28, subd. (b)(6).)  Given these circumstances, petitioners contend that, as a matter of law, crime victims and their legal representatives cannot be deemed part of the prosecution team for purposes of *Brady*.  As the People argue, to "impose on the victim's law firm the moniker of 'prosecution team' is to impose on the victim-principal a status limiting the victim's constitutional rights . . . and limits the agent lawyer's ability to take actions on the principal's own behalf to secure recovery that may well conflict with the prosecution's interests."

However, whatever the wisdom of petitioners' proposed rule that a victim's attorney cannot, as a matter of law, be deemed part of the prosecution team, we conclude that the particular facts of this case demonstrate that *Valla* cannot be deemed part of the prosecution team.  As the *Meregildo* court aptly explained when distinguishing between government agents and non-governmental cooperating witnesses for the purpose of determining whether an actor may be deemed part of the prosecution team: "At bottom, imputation involves a question of agency law: should a prosecutor be held responsible for someone else's actions?  ([Citation; citing] Restatement (Second) of Agency § 272.)  An agency relationship is limited in scope and defined by control. Restatement (Second) of Agency § 14.  'A principal has the right to control the conduct of the agent with respect to matters entrusted to him.').  And an agent's duties are limited by the scope of the agency relationship. Restatement (Second) of Agency § 14. Generally, a principal is responsible for the knowledge of an agent when that agent has a 'duty to give the principal information' or when the agent acts on his knowledge regarding a matter that is 'within his power to bind the principal.'  Restatement (Second) of Agency § 272.  An agent's duty to disclose is thus linked to his power to bind the principal. [¶] Because a prosecutor exercises greater control over federal agents than cooperating witnesses, the agency relationship between a federal agent and a prosecutor is strong.  *By contrast, the scope of the agency relationship between a cooperating*

14

*witness and a prosecutor is narrower and warrants imputation in fewer circumstances.*
*This comports with sound policy and common sense. It does not require an analysis of*
*agency law to determine that a police officer or federal agent is in a better position than*
*a cooperating witness to bind the federal government.*"  (*Meregildo, supra,* 920
F.Supp.2d at pp. 443-444 [italics added].)

As this discussion by our federal colleague in *Meregildo* reflects, the issue, in
essence, is whether the prosecution has exercised such a degree of control over the
nongovernmental actor or witness that the actor or witness's actions should be deemed to
be those of the prosecution for purposes of *Brady* compliance.  Further, this framing of
the issue fits well within the broader standard, set forth in the California case law,
requiring a prosecutor to search for and disclose exculpatory evidence "if the evidence is
possessed by a person or agency that has been used by the prosecutor or the investigating
agency to assist the prosecution or the investigating agency in its work," such that the
person or agency may be deemed an agent of the prosecution for purposes of the matter at
hand. (E.g., *Barrett, supra*, 80 Cal.App.4th at p. 1315; see also *Kyles v. Whitley, supra*,
514 U.S. at p. 437 ["[t]he important determina[tion] is whether the person or agency has
been 'acting on the government's behalf' "]; accord Restatement (Second) of Agency
§ 14 ["A principal has the right to control the conduct of the agent with respect to matters
entrusted to him".)  Given the record at hand, we conclude the answer in this case is, no.
Quite simply, Valla's involvement with the prosecution as a cooperating witness in this
matter has not been significant enough to warrant the trial court's finding that Valla's
files should be deemed under the district attorney's "control" for purposes of *Brady*.

In so concluding, we again note that, below, the trial court relied primarily upon
the sharing of legal citation and "analysis" between Valla and the police or district
attorney, and the delegating by the district attorney to Valla of the task of hiring and
paying for a forensic accountant to prepare a report and testify regarding the factual basis
for the charges against defendant.  However, based on our own review of the record, we
conclude the evidence is in fact much more benign than the trial court's ruling would
suggest.  For example, with respect to the sharing of legal authority, it appears Valla did

15

no more than share a handful of legal citations relating to the ratification defense based on the research the firm had already undertaken in the civil action it was pursuing against defendant on its client's behalf – a task that took only about five or 10 minutes. Contrary to the trial court's finding, however, the firm did not undertake on behalf of, or provide to, the district attorney any legal analysis, the sort of cooperation that, under the case law, might place a private party under the prosecution-team umbrella.

Next, the trial court accurately found that the district attorney suggested to Valla, as legal representative to IAR, that it select and hire a forensic accountant to examine and then testify regarding the financial evidence of defendant's crimes. However, this circumstance, if anything, reflects the complex nature of these crimes rather than any submission of Valla to the direction of the prosecutor. As deputy district attorney Nardi readily acknowledged to Valla, her office had insufficient experience and resources to adequately investigate "an embezzlement case of this magnitude," particularly in light of the complex global corporate structure of IAR and the extent of defendant's alleged wrongdoing (spanning "nearly a decade"). Further, the accountant ultimately retained by IAR , Steven Smith, had provided routine accounting and tax services to IAR since 2012 (to wit, before law enforcement began investigating the underlying crimes in this case), and had been designated by IAR as an expert witness in the civil action against defendant.[6] According to Smith's testimony, he, at Valla's request, "independently took the data, the credit card receipts and created our own report [for IAR]." Then, once Smith completed his report, he sent it to Valla and IAR's finance manager before the report ultimately "found its way to the District Attorney." While Smith later testified at the preliminary hearing for the prosecution, he did not consider his work to be for or at the direction of the prosecution; rather, he worked independently for IAR. Nor did deputy district attorney Nardi understand Smith to be part of the prosecution's team, much less exert the degree of control, direction or assistance over his work as would be

---

[6]     Contrary to the trial court's suggestion, it was IAR, not Valla, that retained and paid for Steven Smith, the accounting expert.

necessary to trigger the prosecution's disclosure obligations under *Brady*. Given this record, we conclude the fact that law enforcement may have obtained more specialized information and expertise from the crime victim, IAR, in this case than it would have in a more ordinary criminal case does not, without more, prove Valla and the prosecution were "team members" for purposes of *Brady*. (See *Meregildo, supra,* 920 F.Supp.2d at p. 441 ["At its core, members of the team perform investigative duties and make strategic decisions about the prosecution of the case"].)

Finally, with respect to Valla's request for information from the district attorney's office about the crimes with which they intended to charge to defendant, the record reflects that Valla made this request in order to prepare questions regarding the elements of these crimes for defendant's already-scheduled deposition in the civil matter. It does not, to the contrary, reflect Valla's investigation of defendant at the direction of or on behalf of the prosecution in this criminal matter. Further, according to the record, in response to Valla's request, the police merely provided the firm with two citations to Penal Code provisions. While it is true that Valla later gave law enforcement a copy of defendant's deposition transcript with certain portions underlined, there is no evidence that Valla asked any question during defendant's deposition at the direction of the police, or shared or highlighted deposition testimony for any reason other than its own preparation in the civil matter. As such, the record establishes no more than that Valla, attorney of record for IAR in a civil lawsuit against defendant, was discharging its fiduciary duty to thoroughly investigate the facts and seek appropriate legal redress on behalf of its client rather than working on behalf, and as an agent, of the government to prosecute defendant in the criminal realm.

Lastly, two additional factors persuade us that the trial court's decision cannot stand on this record. First, we note that Valla's conduct in each of the identified instances was wholly consistent with the general right of crime victims under the California Constitution to "reasonably confer with the prosecuting agency" regarding "the charges filed" against the defendant. (Cal. Const., art. 1, § 28, subd. (b)(6).) As deputy district attorney Nardi testified, it was common practice for her office to

17

communicate with crime victims through their attorneys. While it is undoubtedly true that Valla and IAR, as crime victim, and the district attorney, as prosecutor, share an interest(s) in the outcome of this case, the nature of their interests surely differs. Specifically, while crime victims and their attorneys inevitably have privately-motivated interests in bringing a defendant to justice and, if appropriate, gaining redress, the district attorney, as an arm of the government, is duty-bound to serve the public interest in uncovering the truth behind the underlying charges. (See *United States v. Josleyn* (1st Cir. 2000) 206 F.3d 144, 154 ["While prosecutors may be held accountable for information known to police investigators, [citation] we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests. Those private interests, as in this case, are often far from identical to — or even congruent with — the government's interests"].)

Indeed, and in any event, in deciding the issue at hand, our focus is not on any commonality of interest between a third party and the prosecution; rather, our focus is on whether the third party has been acting under the government's direction and control by, for example, "actively investigat[ing] the case, act[ing] under the direction of the prosecutor, or aid[ing] the prosecution in crafting trial strategy." (*Meregildo, supra,* at p. 442; see also *Barrett, supra*, 80 Cal.App.4th at p. 1315.)

Second, as the United States Supreme Court has aptly recognized, "naturally, . . . a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. [Citation.] ('The prudent prosecutor will resolve doubtful questions in favor of disclosure'). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as 'the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.' [Citation.] And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. [Citations]; *United States v. Leon*, 468 U.S. 897, 900-901, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984) (recognizing general goal of establishing 'procedures under which criminal defendants are "acquitted or convicted on the basis of all the evidence which exposes the

18

truth" ' (quoting *Alderman v. United States*, 394 U.S. 165, 175, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969)). The prudence of the careful prosecutor should not therefore be discouraged." (*Kyles v. Whitley, supra*, 514 U.S. at pp. 439-440. See also *Barrett, supra*, 80 Cal.App.4th at p. 1315 ["[t]he important determinant is whether the person or agency has been 'acting on the government's behalf' [citation] or 'assisting the government's case.' [Citation.]"].) Thus, putting aside our conclusion that Valla cannot be deemed part of the prosecution team for purposes of this case, the scope of the prosecution's duty of disclosure under *Brady* remains sufficiently broad to protect defendant's fundamental right to a fair trial designed to uncover, rather than conceal, the truth.[7] At the same time, by declining to unnecessarily extend the scope of this duty to include Valla in this case, we avoid undue intrusion into the equally sacrosanct duty of a private attorney or law firm to zealously represent the interests of its client with undivided loyalty. As the California Supreme Court has explained: "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. [Citations.] The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. [Citation.] The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." (*People ex*

---

[7]  In addition to the binding authority of *Brady* and its progeny, California recently enacted section 141, which makes it a felony, punishable by imprisonment, for a prosecutor to intentionally and in bad faith conceal or destroy certain exculpatory information: "A prosecuting attorney who intentionally and in bad faith alters, modifies, or withholds any physical matter, digital image, video recording, or relevant exculpatory material or information, knowing that it is relevant and material to the outcome of the case, with the specific intent that the physical matter, digital image, video recording, or relevant exculpatory material or information will be concealed or destroyed, or fraudulently represented as the original evidence upon a trial, proceeding, or inquiry, is *guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170 for 16 months, or two or three years*." (§ 141, subd. (c).)

*rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (1999) 20 Cal.4th 1135, 1146-1147.)[8]

Thus, having carefully considered the undisputed record in this case in accordance with these legal principles, we conclude for all the reasons identified above that Valla engaged in few, if any, of the sort of activities that would render it part of the prosecution team. While it is no doubt true that Valla was engaged in investigating the facts of defendant's misconduct and crafting a trial strategy, it undertook these tasks on behalf of its corporate client, IAR, in its role as plaintiff's attorney in the civil lawsuit brought by IAR against its former employee. The fact that these tasks sometimes overlapped with the district attorney's efforts to prosecute defendant, and that Valla cooperated with the district attorney in its efforts to uncover the truth about defendant's wrongdoing, does not, without more, make them "team members" for purposes of *Brady*.[9] (Cf. *People v. Uribe*, *supra*, 162 Cal.App.4th at pp. 1479-1481 [holding that a SART examiner was part of the prosecution team where "[the exam] was clearly spearheaded by the police," a

---

[8] We find inapposite defendant's authority, *People v. Eubanks* (1996) 14 Cal.4th 580, a case involving the prosecution of two men for trade secret theft from a company. There, the California Supreme Court held in relevant part that the company's $ 9,450 contribution to the cost of the criminal investigation, *which was made at the district attorney's request to cover a debt already incurred by the district attorney*, first, was properly found by the trial court to have created a conflict of interest and, second, supported the trial court's discretionary decision to recuse the district attorney from the case because the conflict was so grave as to render fair treatment of the defendants in all stages of the criminal proceedings unlikely (§ 1424). (*People v. Eubanks, supra*, at pp. 600-601.) In our case, there is no such after-the-fact request by the prosecution that the third party assume its investigative costs, to wit, the circumstance that, according to the court, jeopardized the likelihood of the criminal defendants receiving fair treatment in *People v. Eubanks*.

[9] Defendant provides other examples of cooperation between Valla and law enforcement. For example, the record reflects that the Foster City Police Department asked Valla for assistance in having the forensic accountant from Deloitte who had retrieved files from defendant's computer explain the retrieved data, and also for assistance in obtaining or explaining certain financial data from IAR relating to defendant's misdoings. None of these instances, however, suffices alone or collectively to make the requisite prosecution-team showing.

20

"major purpose of the examination was to determine whether the allegation could be corroborated with physical findings [that the victim had been sexually abused]," the examiner "collected and preserved physical evidence, consistent with statutory protocol," and "according to her practice — after completion of the SART examination and after she and Dr. Kerns reach concurrence as to their findings as contained in the written report — [the examiner] provided a copy of the forensic report to the police"].)

Accordingly, we conclude the trial court's order was rendered in error and must be reversed.[10]

## DISPOSITION

A peremptory writ of mandate is entered directing the trial court to set aside and vacate its order of February 8, 2016, with the instruction to enter a new order finding that petitioner Valla & Associates is not part of the prosecution team in this case for purposes of *Brady v. Maryland* (1963) 373 U.S. 83, 87.


_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.

---

[10] Nothing in our analysis should be understood to suggest that a private law firm is subject to disclosure obligations under the Due Process clause as expressed in *Brady*.

| | |
|---|---|
| Trial Court: | Superior Court, County of San Mateo |
| Trial Judge: | Hon. Joseph Scott |
| Counsel for Petitioners<br>IAR Systems Software, Inc.: | Antonio Valla, Michael Purcell<br>VALLA & ASSOCIATES, INC. |
| Counsel for Petitioners<br>Valla & Associates, Inc.: | William D. Rauch<br>LAW OFFICES OF WILLIAM RAUCH |
| Counsel for Real Parties in Interest<br>Nadim Shehayed: | Thomas J. Nolan, Serenity Wang<br>NOLAN BARTON BRADFORD & OLMOS LLP |
| Counsel for Real Parties in Interest<br>State of California: | Kamala D. Harris, Attorney General |
| | Gerald A. Engler, Chief Assistant Attorney General |
| | Jeffrey M. Laurence, Senior Assistant Attorney General |
| | Laurence K. Sullivan, Supervising Deputy Attorney General |
| | Bridget Billeter, Deputy Attorney General |

*IAR Systems Software, Inc. et al. v. Superior Court of San Mateo County (Nadim Shehayed et al.)*, A149087